*In re* WIDENING MICHIGAN AVENUE (PARCELS 27, 32, 32A, 33).

1. EMINENT DOMAIN—RAILROAD GRADE SEPARATIONS.

    Statute regulating proceedings for separation and reconstruction or alteration of existing separations of railroad and public highway grades *held,* not to require that grade separation proceedings be had prior to condemnation proceedings for widening of streets (1 Comp. Laws 1929, §§ 4481–4513; §§ 4514–4521, as amended by Act No. 335, Pub. Acts 1931).

2. SAME—RAILROAD GRADE SEPARATION—RIGHTS OF WAY FOR HIGHWAY.

    Under statute regulating proceedings for separation of railroad and public highway grades and the reconstruction or alteration of existing structures for increased highway or railroad facilities, the right of way and other property rights for the highway across the land and tracks of the railroad company, unless otherwise agreed upon, must be acquired in same manner as property is acquired for other highway purposes and may not be acquired under the grade separation statute (1 Comp. Laws 1929, § 4521, as amended by Act No. 335, Pub. Acts 1931).

3. SAME—GRADE SEPARATIONS—DAMAGES.

    Grade separation damages may not be given in proceedings to condemn railroad rights of way for widening a street (1 Comp. Laws 1929, § 4521, as amended by Act No. 335, Pub. Acts 1931).

4. SAME—RAILROAD RIGHTS OF WAY FOR STREET WIDENING—NOMINAL DAMAGES—GRADE SEPARATIONS.

    Awards of six cents each to railroad companies for damages to portions of their rights of way taken by city for street widening purposes are affirmed where within range of testimony, and rights of litigants will not be affected by such affirmation since it does not preclude steps being taken to accomplish proposed reconstruction or alteration of existing grade separations (1 Comp. Laws 1929, §§ 4514–4521, as amended by Act No. 335, Pub. Acts 1931).

5. SAME—DAMAGES—LEASEHOLD INTEREST IN FRAME WAREHOUSE.
   Award of deduction of $2,280 to lessee from joint award of
   $4,263.23 as damages to land and $660 damages to frame
   warehouse, owned by railroad company, in proceedings to
   condemn land taken for street widening purposes *held,* not
   excessive but within fair range of testimony and facts which
   jury may have learned in examining property, the lease being
   a profitable one to lessee and entitling it to possession for
   41½ months from the time of trial and its heavy machinery
   being located in portion taken.

Appeal from Recorder's Court for the City of Detroit; Jeffries (Edward J.), J. Submitted October 5, 1937. (Docket No. 12, Calendar No. 39,506.) Decided December 29, 1937. Rehearing denied April 4, 1938.

Condemnation proceedings by City of Detroit to widen Michigan avenue from Roosevelt to Livernois avenues where not already widened as a public street. Joint award to Michigan Central Railroad Company, Guaranty Trust Company of New York, Bankers Trust Company, City of Detroit and County of Wayne as to parcel No. 27. Joint award to Michigan Central Railroad Company, New York Central Railroad Company, Grand Rapids Plaster Company, City of Detroit and County of Wayne as to parcel No. 32. Joint award to Michigan Central Railroad Company, New York Central Railroad Company, City of Detroit and County of Wayne as to parcel No. 32A. Joint award to Chicago, Detroit & Canada Grand Trunk Junction Railroad Company and Grand Trunk Railroad Company of Canada as to parcel No. 33. Michigan Central Railroad Company, New York Central Railroad Company and Grand Trunk Western Railroad Company, successor by consolidation to Chicago, Detroit & Canada Grand Trunk Junction Railroad Company and the Grand Trunk Railroad Company of Canada, appeal. Affirmed.

*Raymond J. Kelly,* Corporation Counsel, and *James H. Lee,* Assistant Corporation Counsel, for petitioner City of Detroit.

*John J. Danhof* and *Harold H. McLean,* for Michigan Central and New York Central Railroad Companies.

*H. V. Spike* and *John J. Gafill,* for Grand Trunk Western Railroad Company.

*Edward R. Stanton* (*Thomas L. Poindexter,* of counsel), for Grand Plaster Company.

BUSHNELL, J.  The tracks of the Michigan Central Railroad Company, the New York Central Railroad Company and the Grand Trunk Western Railroad Company all cross Michigan avenue in the city of Detroit near Clark avenue.  In 1903 a grade separation contract was entered into between certain railroad companies, the city of Detroit and the Detroit United Railway Company (which at that time owned and operated the street railways of the city), whereby various grade crossings were to be discontinued.  Subsequent thereto, the street level of Michigan avenue was lowered and the railroads have since used overhead viaduct crossings.  Michigan avenue at this railroad viaduct is 66 feet wide.

In November, 1930, the city of Detroit, under the provisions of title 8, chap. 1, of its charter, filed a petition in the recorder's court of the city of Detroit to condemn property for the purpose of widening Michigan avenue from Roosevelt to Livernois avenues.  The easterly property line of the railroad right of way at the viaduct runs north 28° 39′ 45″ east, and Michigan avenue runs north 88° 52′

45″ west. It is proposed to take 60.91 feet of the railroad frontage on the south side of Michigan as measured along the easterly and westerly lines of the rights of way. Parcels 27, 32, 32A and 33 of the condemnation project involved in this appeal are all owned by one or another of the various railroads. There is located on parcel 32 a frame warehouse owned by appellant New York Central Railroad Company and leased by it to appellee Grand Rapids Plaster Company, a Michigan corporation.

Nothing was done in the widening case from 1930 until late in 1935. After a jury was impaneled in December of the latter year, the railroads moved to dismiss the widening petition as to their parcels. They claimed that the court lacked jurisdiction to condemn the portion of their right of way where a grade separation structure has already been established until after a determination by the Michigan public utilities commission, as required by Act No. 335, Pub. Acts 1931, amending Act No. 114, Pub. Acts 1925, unless compensation is provided for the necessary structural changes.

As sometimes happens, because of the loose manner in which condemnation cases are tried in the city of Detroit without the presence of the trial judge, except when he is called into the court room to rule upon objections, the case proceeded for a matter of six months before the railroad parcels were reached, and not until then was a ruling by the trial judge sought on this motion. Then, as expressed by the trial judge, the parties found themselves "in the middle of the stream" and the court denied the several motions, saying:

"I fully appreciate the responsibilities. I am taking them. I am in the middle of the stream, and I might as well go to the other end of it and see what

it is, go through and get over to the other bank if I can, as to back out; because it won't make any difference. * * *

"Now, I disposed of it. I am fully conscious of it. If I am in the middle, somebody is going to get me out, and it looks to me that the Supreme Court is the only one that can get me out, because there is no use backing up on this matter now."

About two weeks later, at a time when the judge was about to leave the court room, appellants offered in evidence the 1903 grade separation contract, on the theory that the city was precluded from requiring a change in the grade separation structures unless it assumed the additional cost. The court refused to admit the written agreement in evidence, nevertheless it appears in the record before us as an exhibit. There also appear the railroads' estimate of the cost of reconstruction, although it was not admitted by the trial judge.

The record also contains what is evidently only a portion of the corporation counsel's argument to the jury, some of which is unsupported by any testimony whatever and contains highly prejudicial statements to the effect that similar tactics were used by appellants in the Woodward widening. We quote, by way of illustration, the following:

"*Mr. Lee:* Now, there are three railroads involved in this proceedings. Two of the railroads cross on an elevated bridge. The other railroad crosses at grade.

"Now, the railroads have come into this proceeding and now attempt to—you heard the argument; you heard the judge's ruling; you should be bound by his ruling because he is right.

"They attempt to collect from the city of Detroit the cost of reconstructing those two viaducts, know-

ing full well that they would never spend a nickel to reconstruct them. Every dollar for the cost of reconstructing these new viaducts, which it is estimated will cost half a million dollars apiece,—every dollar will come from the Federal government. But still they would like to collect it if they could.

"They tried it on Woodward. They went to the Supreme Court even. But the bridge is there and they didn't pay a nickel for the bridge.

"That is why we have to fight with these fellows so much. That is why we have to be at them constantly, because if we give it to them and the verdict becomes confirmed and something else happens, there is no way to get it back.

"They are only entitled to six cents to the land, because the easement is still imposed upon the right of way. If in addition to the land in the right of way we have any other land outside of the right of way, we pay them for it. Also, we pay them for any building affected in the right of way."

In support of the court's action in dismissing the motion, the city argues that:

"Act No. 335, Pub. Acts 1931 (Comp. Laws Supp. 1935, §§ 4514–4521-2), was not applicable to this proceeding, because the condemnation case was commenced prior to the enactment of the said statute; because land only was taken in the condemnation proceeding; because a separate proceeding will subsequently be instituted and tried to determine the damages growing out of the grade separation of the street, as widened. In said proceeding the cost of the viaduct structures will be determined and the payment of said costs will be allocated partly to the city of Detroit and partly to the railroad companies, under the provisions of Act No. 92, Pub. Acts 1893 (1 Comp. Laws 1929, §§ 4481–4513)."

We are of the opinion that, contrary to appellants' contention, Act No. 335, Pub. Acts 1931 (Comp. Laws

Supp. 1935, §§ 4514–4521-2), which amended Act No. 114, Pub. Acts 1925 (1 Comp. Laws 1929, §§ 4514–4521), does not require that grade separation proceedings be had prior to condemnation. See *A. M. Campau Realty Co.* v. *City of Detroit,* 268 Mich. 417, involving Act No. 92, Pub. Acts 1893.

Appellants rely on Act No. 335, § 8, Pub. Acts 1931 (Comp. Laws Supp. 1935, § 4521) as supporting their view. This section reads as follows:

"Whenever permission is granted * * * for the reconstruction of existing grade separations * * * and the alteration of existing grade separations for increased highway or railroad facilities, the right of way and other property rights, if any, for said highway across the land and tracks of the railroad company shall, unless otherwise agreed upon, be acquired in the same manner as property is acquired for other highway purposes."

This section means merely that, if the municipality elects to proceed first under the grade separation statute, it cannot acquire necessary property rights in such proceeding but must resort to a separate condemnation action. This conclusion makes it unnecessary to consider appellants' argument that Act No. 335 is applicable to an action pending at the time of its enactment.

The holding in the *Campau Realty Case, supra,* is adverse to appellants' contention that grade separation damages may be given in condemnation proceedings. Except as to the matters herein expressly discussed we do not pass upon the issues involved in the grade separation phase of the instant case.

The jury awarded six cents to each of appellants for damages to their land as described in parcels 27, 32A and 33. This does not preclude steps being taken to accomplish the proposed reconstruction or

alteration of existing grade separations or any new ones if required. The right of any litigants in such respect will not be affected by an affirmation of the award for damages to the land embraced in the parcels named. The amount allowed being within the range of the testimony, these awards should be affirmed.

The New York Central Railroad Company also appeals from that portion of an award on parcel 32 of $4,263.23 as damages to the land and $660 damages to the building, which requires the sum of $2,280 to be deducted therefrom as leasehold damages to Grand Rapids Plaster Company, appellee. It is claimed that the award to the Grand Rapids Plaster Company is excessive and unsupported by the evidence.

The lease in question was entered into for a period of one year on July 1, 1931, "subject to termination by either party on 30 days' notice," and provides for an annual rental of $720, which was reduced in October, 1933, to $480. Because of improvements installed by the lessee, the lessor, on November 14, 1934, agreed in writing that "the lease will not be disturbed by this company within five years from this date."

Lessee's heavy machinery, consisting of a sand dryer and mixing machine, one of which weighs six tons, is located in the portion taken. Appellee had a profitable lease at a low rental and could not be disturbed by the lessor in its possession of the premises for 41½ months from the time of trial. The testimony presented was fair and reasonable and wholly uncontradicted by the lessor.

An examination of the record indicates that the damages awarded the lessee were within the fair range of the testimony and of the facts which the

jury may have learned in their examination of the property. *In re Widening of Michigan Avenue, Roosevelt to Livernois (Parcel 68),* 280 Mich. 539.

There is no reason to disturb the award as to parcel 32 and it is affirmed, with costs.

The various awards as to parcels 27, 32A and 33 are also affirmed, with costs.

FEAD, C. J., and NORTH, WIEST, BUTZEL, SHARPE, POTTER, and CHANDLER, JJ., concurred.