CASE v. CITY OF SAGINAW.

1. RAILROADS — MUNICIPAL CORPORATIONS — GRADE SEPARATIONS — BRIDGES—CHARTERS—STATUTES.

Under statutes authorizing city to contract with railroads for separation of grade crossings and to declare the necessity therefor by resolution and providing that State shall participate in the cost of constructing bridges and grade separations through contracts between cities and State highway commissioner, city of Saginaw, whose charter vests all powers in the city required or permitted a city and does not bar it from entering into contract with State highway commissioner and railroads relative to combined grade separation and bridge, properly entered into such a contract (1 Comp. Laws 1929, §§ 4415, 4418, as amended by Act No. 131, Pub. Acts 1931, §§ 4481, 4483).

2. EMINENT DOMAIN—GRADE SEPARATIONS.

Proceedings to separate crossings of highways with railroads at grade are not the exercise of the power of eminent domain (1 Comp. Laws 1929, §§ 4415, 4418, as amended by Act No. 131, Pub. Acts 1931, §§ 4481, 4483).

3. SAME—COMBINATION BRIDGE AND GRADE SEPARATION—FINDING OF NECESSITY.

Proceeding by city to erect a combination bridge and railroad grade crossing separation was not invalid as depriving abutting property owners of property rights without a finding of necessity and without just compensation therefor made or secured since such proceedings were not under the power of eminent domain (1 Comp. Laws 1929, §§ 4415, 4418, as amended by Act No. 131, Pub. Acts 1931, §§ 4481, 4483).

4. HIGHWAYS AND STREETS—COMBINATION BRIDGE AND GRADE SEPARATION—FINDING BY COURT AS PART OF TRUNKLINE.

In view of statute giving a court discretion to require testimony at a hearing on any motion where a question of fact is involved, court properly received testimony as to whether portion of street upon which it was proposed to erect a combination bridge and railroad grade crossing separation was on a State trunkline highway, and finding that it was, was justified by pleadings and testimony showing that city by resolution had requested State to participate in the cost of maintenance of a

certain trunkline within city limits, that portion here involved had been designated as a trunkline highway, that annual payments covering a portion of the cost of maintenance of such part had been made by the State highway department and accepted by the city, and that the Federal government was participating in the cost of the project (Comp. Laws 1929, §§ 4415, 4418, as amended by Act No. 131, Pub. Acts 1931, §§ 4430, 4481, 4483, 14259).

5. PLEADING—ALLEGATION ON MOTION TO DISMISS—INFORMATION AND BELIEF.

Allegation in bill of complaint that parties acting in behalf of plaintiffs were unable to obtain information from State highway department and city clerk that portion of street in question was a trunkline highway and therefore charged on information and belief that it was not legally and properly such a highway *held,* not an outright allegation of well-pleaded facts which could be taken as true on motion to dismiss (Court Rule No: 23, § 2 [1933]).

6. SAME—MOTION TO DISMISS—WELL-PLEADED FACTS.

On a motion to dismiss, only such facts in the allegations as are well-pleaded can be considered by the court.

7. SAME—WELL-PLEADED FACTS IN ANSWER—MOTION TO DISMISS.

On motion to dismiss plaintiffs' bill of complaint, well-pleaded facts alleged in defendants' answers which were uncontroverted must be taken as admitted (Court Rules Nos. 23, § 2; 24, § 1 [1933]).

8. RAILROADS—STATE HIGHWAY COMMISSIONER—REASONABLE CONTROL OF STREETS BY MUNICIPALITY.

Action of State highway commissioner in altering street in question by erection of combined bridge and railroad grade crossing separation was not in violation of constitutional provisions relative to reasonable control of streets by cities (Const. 1908, art. 8, §§ 27, 28; Comp. Laws 1929, §§ 4415, 4418, as amended by Act No. 131, Pub. Acts 1931).

9. SAME — GRADE SEPARATION — RESOLUTIONS — ORDINANCES — CHARTERS.

Under statute authorizing city to declare it necessary for the public benefit to make a separation of grades between railroad and city street, action of common council in making such declaration by resolution and entering into a contract with State highway commissioner and railroad companies with respect to erection of combined bridge and grade separation

was not invalid because not by ordinance, there being no charter requirement that contracts be entered into by ordinance (1 Comp. Laws 1929, §§ 4415, 4418, as amended by Act No. 131, Pub. Acts 1931, §§ 4481, 4483).

10. Municipal Corporations—Statutes—Resolutions.

If no statute prescribes a method of action and no charter provision requires it, when the action is merely declaratory of the will of the municipal corporation in a given matter and is in the nature of a ministerial act, it is proper to act by resolution.

11. Appeal and Error—Motion to Dismiss—Opinion of Court—Surplusage.

Claimed error in statements made by the trial court in its opinion granting motion to dismiss, not essential to determination thereof, could be treated as surplusage where trial court properly decided determining questions and bill was dismissed as insufficient in substance.

12. Costs—Public Question—Combined Bridge and Viaduct—Grade Separation.

No costs are allowed in suit by property owners to enjoin city, State highway commissioner, and railroads from erecting a combined bridge and viaduct which would eliminate a railroad grade crossing, a public question being involved.

13. Railroads—Grade Separations—No Immunity for Private Injuries.

The grant by the legislature of powers and privileges to public utility and municipal corporations to erect a bridge and railroad grade crossing separation does not carry with it any immunity for private injuries which may result directly from the exercise of such powers and privileges (1 Comp. Laws 1929, §§ 4415, 4418, as amended by Act No. 131, Pub. Acts 1931, §§ 4481, 4483).

Appeal from Saginaw; Sample (George W.), J., presiding. Submitted October 10, 1939. (Docket No. 107, Calendar No. 40,782.) Decided November 9, 1939. Rehearing denied February 14, 1940.

Bill by Winfred L. Case and others against City of Saginaw, a municipal corporation, Murray D. Van Wagoner, State Highway Commissioner, and others to restrain the construction of a high level

bridge and for other relief. From order granting motions to dismiss by defendants City of Saginaw and State Highway Commissioner, plaintiff appeals. Affirmed.

*E. B. Reese* (*Alfred P. Pierson,* of counsel), for plaintiffs.

*Thomas Read,* Attorney General, and *Edmund E. Shepherd,* Assistant Attorney General, for defendant State Highway Commissioner.

*F. Roland Sargent,* for defendant City of Saginaw.

*William C. O'Keefe* (*John J. Danhof* and *Harold H. McLean,* of counsel), for defendants Michigan Central Railroad Company and New York Central Railroad Company.

MCALLISTER, J. Property owners in the city of Saginaw filed a bill for an injunction against the city, the State highway commissioner, the New York Central Railroad, and the Michigan Central Railroad to restrain the erection of a combined bridge over the Saginaw river and viaduct eliminating a railroad grade crossing. On a motion, the trial court dismissed the bill, and plaintiffs appeal.

Court street in the city of Saginaw is intersected by the railroad track at grade crossing a short distance before the street crosses a bridge over the Saginaw river. The present bridge is in need of repair, if not reconstruction; and in order to eliminate the grade crossing, it is proposed to bridge the crossing by a viaduct approach to a new and higher bridge over the river. In order to build such a grade separation and bridge, it is necessary to erect the viaduct in the middle of Court street, start-

ing back several hundred feet from the railroad track and river, rising from street level at a 3½ per cent. gradient to a height of about 18 feet above the street. The present street is 99 feet wide, including sidewalks. The proposed viaduct is 59 feet wide. On each side of the viaduct it is planned to have a 10-foot width of roadway in the street below, together with sidewalks approximately 9¾ feet wide adjoining such roadway. From the point of beginning of such a viaduct on Court street, the construction is to be a solid "fill in" of concrete for a distance of 100 feet; and from that point, the viaduct will be supported by concrete and girder-type piers, extending the width of the viaduct and placed from 35 to 50 feet apart. Plaintiffs, who own buildings and property used for business purposes facing the street where the proposed viaduct is to be erected, allege that such construction will substantially impair the value of their properties and result in great damage to them. The estimated cost of the construction, embracing the approach of the viaduct, the grade separation of the railroad track, and the bridge, is $550,000, to be apportioned between the Federal government, the State highway department, and the city of Saginaw. The project is sought to be undertaken by virtue of the claimed right, under statute, of the city and highway department to enter into such an agreement for the elimination of railroad grade crossings on State trunkline highways within the limits of a city.

It is claimed by appellants that the street in question is not a State trunkline highway; that the action of the city in proceeding to authorize the contract by resolution, instead of by ordinance, is void; that such construction would destroy plaintiffs' property interests in violation of their constitutional rights; that it results in the taking of property with-

out a finding of necessity and resort to condemnation proceedings; and that the action of the city therein is unreasonable and oppressive.

With regard to appellants' contention that the city has no power to enter into a contract with the other defendants for the erection of the structure in question, it is necessary to refer to the statutes and charter provisions relating thereto.

Act No. 92, § 1, Pub. Acts 1893 (1 Comp. Laws 1929, § 4481 [Stat. Ann. § 9.1101]), provides that where any railroad crosses a public street or highway, the common council of the city may effect a separation of the grades at such crossing by entering into an agreement with the railroad company.

Section 3 (1 Comp. Laws 1929, § 4483 [Stat. Ann. § 9.1103]) provides that the common council may further, by resolution, declare it necessary for the public benefit to make such separation of grades in accordance with the plan prescribed by the said agreement.

Under Act No. 19, § 1, Pub. Acts 1919 (1 Comp. Laws 1929, § 4415), as amended by Act No. 131, Pub. Acts 1931 (Comp. Laws Supp. 1935, § 4415, Stat. Ann. § 9.881), it is provided that the State shall participate with incorporated cities in the cost of constructing, reconstructing, and maintaining pavements, bridges, and grade separations in connection with any State trunkline highway or streets that are connecting links of such trunkline highways.

Section 4 of the above act (1 Comp. Laws 1929, § 4418), as amended by Act No. 131, Pub. Acts 1931 (Comp. Laws Supp. 1935, § 4418, Stat. Ann. § 9.884), provides that "contracts and agreements between the State highway commissioner and the legislative body of any incorporated city or village, approved by the State administrative board are hereby authorized and approved."

By statute, therefore, the common council of an incorporated city is empowered to effect an agreement with railroads for the separation of grade crossings, and declare the necessity therefor by resolution, and it is provided that the State shall participate in the cost of constructing bridges and grade separations; and that contracts between the State highway department and the legislative body of such a municipality for such purposes are expressly authorized by statute. The exercise of such power under the statutes, of course, is subject to the limitations of the powers of a city, as contained in its charter, and by constitutional prohibitions, if any such exist.

It is claimed by appellants that the city of Saginaw is not empowered by its charter to build grade separations or bridges; and that the execution of contracts for such purposes is unauthorized and beyond its powers.

Chapter 1 of the charter of the city of Saginaw provides:

"The municipal corporation now existing and known as 'city of Saginaw' shall be and continue a municipal corporation under the name of 'city of Saginaw' and shall be vested with any and all powers which cities are, or may hereafter be, required or permitted to exercise or to provide for in their charters under the Constitution and laws of the State of Michigan, as fully and completely as though the powers were specifically enumerated herein, except for such limitations and restrictions as are provided in this charter and no enumeration of particular powers of the city in this charter shall be held to be exclusive."

There is no charter inhibition against the city of Saginaw's entering into such a contract with the State highway department, as was done in this case,

since the city is vested with all powers which cities are permitted to exercise under statutes as fully as though such powers were specifically enumerated.

It is, however, contended that the action of the city and the highway department in constructing such a grade separation would result in taking property for public use without finding of necessity and resort to condemnation proceedings, and would, therefore, result in an unconstitutional deprivation of property rights without due process of law.

Apparently, there is no doubt that the plaintiffs will be greatly disadvantaged by the bridge and grade separation and that the proposed structure will have a detrimental effect upon their property, interfering to some extent with light and air, and limiting access to property fronting the built-in portion of the approach.

In support of their argument that such proceedings are in violation of due process of law, plaintiffs rely upon the authority of *Schneider* v. *City of Detroit,* 72 Mich. 240 (2 L. R. A. 54), in which it was said:

"The construction of bridges over railroads is not the ordinary or usual method of grading streets. The exercise of the power to erect such bridges in streets would necessarily involve quite an amount of abutting property in damage, and some entirely in destruction, for any beneficial use or enjoyment. Such consequences cannot be brought under the general power to grade streets, but must be provided for under the power of eminent domain. Private property cannot be appropriated for the public use without the necessity therefor is first determined by a jury under our Constitution, and compensation awarded and paid."

It may be observed that the above case was decided before the enactment of the grade separation statute

above referred to. The *Schneider Case* was followed by *Harper* v. *City of Detroit*, 110 Mich. 427, involving a similar question, and was the first case coming before the court after the passage of the grade separation statute. With reference to the question under consideration, the court said:

"Whether the case may be distinguished from *Schneider* v. *City of Detroit*, we deem it unnecessary to determine. By the first section of act of 1893, above referred to, it is provided that—

" 'Where any railroad crosses, or shall thereafter cross, any public street or highway, the separation of the grades at such crossing, by carrying such street or highway either over or under such railroad or railroads at the point of intersection, may be effected as follows.' * * *

"*We think the proceedings for the separation of the grades should have been taken under this act,* which was intended for the protection of owners of property abutting upon a highway, an ·injury to which would result from a separation of the grades."

It is significant to emphasize that the court was of the opinion that the proceedings should have been brought under the grade separation statute.

Following this decision, in *Phelps* v. *City of Detroit*, 120 Mich. 447, in a like situation, the court said:

"The learned counsel for the defendant in the present case seem to have entirely misconceived what Mr. Justice Campbell had in mind in adding what he did in the opinion. He agreed in the result, —that is, agreed that the city was liable for the damages sustained by the plaintiff,—and undoubtedly agreed to the proposition that the *charter provisions were not broad enough to warrant the action,* and consequently the power, if it existed, must necessarily come from the right of eminent domain; that this right not having been exercised, the city had

acted without authority, and was a wrongdoer, and must respond in damages.''

In view of the fact that the court had previously held, in the *Harper Case,* that such proceedings should have been brought under the statute, it can be said that all that the court actually decided in the above case was that because the proceedings had not been brought under the statute, the action of the city, resulting in damage to property rights, being without authority, was wrongful. In none of the cases above mentioned had the proceedings been brought under the provisions of the grade separation statute.

*Ranson* v. *City of Sault Ste. Marie,* 143 Mich. 661 (15 L. R. A. [N. S.] 49), cited by plaintiffs, was a case where the approach to an elevated bridge completely cut off access by vehicles to abutting owners. The court held there had been a taking of plaintiff's property without proceedings to determine necessity or resulting damage. It was stated, however, that the city ''was not, and did not, in fact, suppose that it was proceeding in the exercise of any chartered power of the city over its streets or to erect bridges.''

However, any uncertainty arising out of the various foregoing decisions was resolved in *City of Detroit* v. *Railway Co.,* 163 Mich. 229, where it was held that property is not ''taken'' within the meaning of the constitutional provisions when consequential damages result from the separation of grades. After citing the various cases theretofore decided under the grade separation statute, the court said:

''It is said by counsel for the city that in none of these cases was the necessity for the improvement and the damages to be awarded determined before the improvement was actually undertaken. In all

of them an award was made by a jury in proceedings under the act, and the points presented for decision related to the class of persons, determined by interest in property, entitled to damages and the measure of the damages recoverable under the statute. Whatever may be thought of some expressions to be found in the opinions which have been filed and to which reference will be made, there can be found in the decisions themselves no reasonable support for the idea that in making the improvements the city exercised the power of eminent domain, or that it was acting without proper authority. The contention that damages under the act should be measured in accordance with rules governing awards in cases where private property is taken for public uses has been expressly overruled."

With regard to the older cases, and, in particular, the *Schneider Case,* the court said:

"Counsel for respondents find in some of the earlier opinions of the court, in cases involving improvements in highways, and in some of those delivered in cases arising under the particular act, support for the idea that the consequential injuries resulting from such improvements as are here involved constitute a taking of private property within the meaning of the Constitution and require affirmance of the order appealed from. A brief reference will be made to them. In *Schneider* v. *City of Detroit,* 72 Mich. 240, 245 (2 L. R. A. 54), it was said by Mr. Justice Champlin:

" 'If the common council of the city of Detroit had authority to construct the bridge over the railroad tracks, all their proceedings having been regular, and the bridge and approaches having been erected according to the plans adopted, the city is not liable in this action.' "

In its conclusion, the court said:

"Whatever authority there may be for the doctrine that, if a city acts without legislative authority

with respect to its streets, it must respond in damages to those whose use and enjoyment of abutting property is in consequence restricted or injuriously interfered with, none of the cases relied upon and none that have been brought to our attention support the proposition that improvements and changes made in the streets, by legislative authority, impose any liability unless the legislature so declares. * * *

"It seems to be unnecessary to say that the legislature has complete control over the highways of the State, that what is done in and upon them by lawful authority cannot be considered a nuisance, and that consequential injuries resulting from what is so done are *damnum absque injuria*. The fact that some of the consequential injuries resulting where property is actually taken in condemnation proceedings are similar in character to those resulting where grades are separated furnishes no argument to support the proposition that property is 'taken,' within the meaning of the constitutional provisions here relied upon, when such consequential injuries follow a separation of grades. The decision of *City of Pontiac* v. *Carter,* 32 Mich. 164, is only an application of the rule that if the municipality has power, derived from the legislature, to accommodate streets to a new use consistent with and in aid of the general use to which streets are devoted, abutting owners, whose property is not taken, have no remedy for consequential injuries unless the legislature gives them one. It is obvious that the city of Detroit had power to make a separation of grades. It is equally obvious that the legislature provided a remedy for injuries to abutting property."

"But acts done in the proper exercise of governmental powers, and not directly encroaching upon private property, though their consequences may impair its use, are universally held not to be a taking within the meaning of the constitutional provision. They do not entitle the owner of such property to

compensation from the State or its agents, or give him any right of action. This is supported by an immense weight of authority." *Northern Transportation Co.* v. *Chicago,* 99 U. S. 635, 642.

In *Mead* v. *Railroad Co.,* 174 Mich. 521, 531, the decision in *City of Detroit* v. *Railway Co., supra,* was reviewed and the doctrine that proceedings to separate grades are not the exercise of the power of eminent domain was reaffirmed in the following language:

"These are not proceedings against abutting owners, strictly speaking, but the legislature has given power and authority to the municipality under the statute to separate highway and railroad grades, and such proceedings are not the exercise of the right of eminent domain; the State having already complete control over its public highways. *City of Detroit* v. *Railway Co.,* 163 Mich. 229, 234 *et seq.,* and cases cited; *Harper* v. *City of Detroit,* 110 Mich. 427. The provision made by the legislature for judicial proceedings to determine the public necessity for making the improvement and appraising any damages caused by said change of grade accruing to abutting owners and others in the class designated furnishes the machinery for the exercise of the powers given, an adequate remedy, and a forum in which to determine the rights of all parties injured."

With regard to appellants' claim that the proceedings in this case were invalid for the reason that plaintiffs were deprived of their property rights without a finding of necessity and without just compensation therefor made or secured, we have already determined that these proceedings were not carried out under the right of eminent domain. We find no merit in the contention that be-

cause proceedings to ascertain damages resultant from grade separations are to be commenced within one year of the making of the separation, that such statute is an unconstitutional deprivation of rights. The entire proceedings have heretofore been held constitutional. *Mead* v. *Railroad Co., supra.* See *A. M. Campau Realty Co.* v. *City of Detroit,* 268 Mich. 417; *In re Widening Michigan Avenue,* 283 Mich. 55.

In granting the defendants' motion to dismiss, the trial court found that Court street was a part of State trunkline highway M-46. Plaintiffs contend that on the hearing of a motion to dismiss, the court is bound to accept the allegations of the bill as true, and that issues of fact can be determined only upon final hearing on the merits. They further complain that testimony taken on the hearing to prove that Court street was part of a trunkline highway was inadmissible.

In considering this claim, which is of primary importance in this appeal and upon which the case depends, we refer to the pleadings and the proceedings on the motion to dismiss. In paragraph 27 of the bill of complaint:

"Plaintiffs allege, on information and belief, that the said Michigan State highway department has attempted to establish said Court street as a State trunkline highway, but they allege that said Court street was a public street of said city and used as such for upwards of 30 years before such attempt was made to establish it as a trunkline highway, and they allege further that such street could not in any event become or be established as a trunkline highway without proper approval and consent of said city, which plaintiffs allege, on information and belief, has never been obtained or given."

In the answer of the State highway commissioner, it is alleged:

"That this defendant denies the allegations contained in paragraph 27 of complaint, and avers that such portion of said Court street where the proposed project is located is and has been established as a State trunkline highway for many years, and that this defendant has caused to be paid to the city of Saginaw, since September 5, 1927, annual payments covering a portion of the cost of maintenance of trunkline highway within the city of Saginaw, and that said payments were based upon a schedule which includes that portion of Court street which is designated as State trunkline M-46, and that said city of Saginaw has accepted such payments paid according to the statute in such case made and provided, and that the portion of said Court street now designated as State trunkline M-46 has been lawfully established as a State trunkline highway, and is not a city street in the constitutional sense."

In the answer of the city of Saginaw, it was set forth:

"In answer to paragraph 27 thereof, defendant city of Saginaw denies the allegations therein contained.

"Further answering said paragraph 27, defendant city of Saginaw avers that Court street, more particularly that portion to be occupied by the proposed structure, is a State trunkline highway by virtue of statutes in such case made and provided and by the action of the city council of the city of Saginaw taken on the 8th day of December, 1931, a statement of which said action follows:

" 'By Councilman Holcomb:
" 'City of Saginaw, county of Saginaw:
" 'Whereas, by authority of Act No. 131, Pub. Acts 1931, the State of Michigan is authorized to participate in the cost of maintenance of State trunkline highways within the corporate limits of various cities or villages within this State; and

" 'Whereas, the schedule for said participation is definitely set forth in said act and is based upon the population of each city or village; and

" 'Whereas, said act further provides that before the State may participate, a request be made by the legislative body of said city or village by duly recorded resolution for such participation on the part of the State; and

" 'Whereas, in the city of Saginaw there is at present certain State trunkline highways and said city of Saginaw desires said State to participate in the cost of maintenance of said State trunklines;

" 'Therefore, be it resolved that the council of the city of Saginaw, county of Saginaw, Michigan, a city of 80,715 population as shown by the last Federal census, hereby requests that the State of Michigan participate to the extent of 50 per cent. in accordance with the schedule of said Act No. 131, Pub. Acts 1931, in the cost of maintenance of the following State trunkline highway within the limits of said city of Saginaw described as follows:

" 'US–23, M–46, M–81, M–10 and M–47.

" 'Councilman Weber moved the adoption of the resolution.

" 'Adopted by the following vote:

" 'Ayes: Councilmen Baum, Holcomb, Light, Weber and President Phoenix—5.

" 'Nays: None.' "

After filing the above answers, plaintiffs were permitted to amend paragraph 27 of their bill, and in substitution thereof they allege:

"On information and belief, that upon inquiry made on their behalf at the Michigan State highway department and at the city clerk's office of said city they have been unable to obtain definite information that Court street between Michigan avenue and Washington avenue is a State trunkline highway, and they charge, on information and belief, that said Court street between said Michigan avenue and Washington avenue has not been legally and properly established as a State trunkline highway, and, therefore, is not a State trunkline highway."

On the pleadings, the court, therefore, had before it the following uncontroverted facts: (1) that, by resolution, the city council had requested the State to participate in the cost of maintenance of M-46 within the limits of the city of Saginaw; (2) that that portion of Court street, in controversy in this

case, had been designated as a trunkline highway; (3) that annual payments, covering a portion of the cost of the maintenance of that portion of Court street designated as State trunkline M-46, had been made by the highway department and accepted by the city of Saginaw, according to the statute in such case made and provided; (4) that the Federal government was participating in the cost of construction of the project in the amount of $150,000.

Motions to dismiss, filed by the State highway commissioner and the city, were based upon substantially the matters above set forth in the answers. On the hearing, Alfred Eckert, director of public works and, *ex officio,* city engineer of Saginaw, testified that Court street was a part of M-46; that it was connected with highway M-13; and that it became a connecting link for other trunklines, and that the State highway department had expended money for maintenance costs upon the section of the street upon which the proposed structure was to be built.

According to the provisions of 1 Comp. Laws 1929, § 4415, as amended, the State highway commissioner is authorized to designate streets in cities as connecting links of trunkline highways when so requested by the legislative body of such city. According to the uncontroverted allegations of defendants, the legislative body of the city of Saginaw made the proper request, and the highway commissioner had designated that portion of Court street in controversy as part of trunkline highway M-46.

It is also provided by 1 Comp. Laws 1929, § 4430 (Stat. Ann. § 9.931), that all roads approved for Federal aid shall be trunkline highways. It was uncontradicted that the project on Court street was so approved. The testimony of the city engineer definitely proved that portion of Court street to be

a part of trunkline highway M-46.  Objection that the trial court should not have received testimony on the motion to dismiss cannot be sustained.  It is provided in 3 Comp. Laws 1929, § 14259 (Stat. Ann. § 27.988) :

"Upon the hearing of any motion or petition where any question of fact is involved, the court hearing such motion or petition, may in its discretion, if it deems it necessary in order to reach a just conclusion as to such facts, require the production of all, or any of the witnesses having knowledge of the matters of fact involved on such motion or petition for examination before him in open court."

For the purposes of this case, the testimony received can be limited to consideration of proof that trunkline highway M–46 included that portion of Court street on which the proposed structure is sought to be erected.

On the aforementioned pleadings and proceedings, the court found that portion of Court street upon which the proposed structure is to be erected to be part of a trunkline highway.  We are of the opinion that his finding is correct.

Plaintiffs' contention that allegations of their bill denied that the street was a trunkline highway and that such allegations must be taken as true on a motion to dismiss is not tenable.  Such allegations were not only based on information and belief alone, but cannot be said to be allegations of well-pleaded facts.  Plaintiffs claim that they were informed by parties acting on their behalf that such parties were unable to obtain information from the highway department and the city clerk that the street in question was a trunkline highway, and, therefore, charging on information and belief that it was not legally and properly such a highway, is not an outright al-

legation of well-pleaded facts. It was only a conclusion of law, coupled with an admission that plaintiffs were entirely ignorant of the facts. Only well-pleaded facts, in the allegations, can be considered by the court. The answers of defendants alleged such facts. They were uncontroverted and must be taken as admitted, in accordance with Court Rule No. 23, § 2 (1933), and Court Rule No. 24, § 1 (1933). Upon such facts, a finding that highway M–46 was a State trunkline highway was a proper conclusion of law on the part of the trial court.

It is urged that the action of the State highway commissioner in altering the street in question by separation of grades is based upon a legislative act, and that such proceedings are in violation of the Constitution of 1908, art. 8, §§ 27, 28. In *Allen* v. *Rogers,* 246 Mich. 501, this court in answer to a similar contention, said:

"It is further claimed by the plaintiffs that the Constitution of Michigan prohibits the State from widening city streets, and that proceedings to condemn property for that purpose must be instituted and carried on under the provisions of the charter of the city of Detroit.

"The constitutional provision is as follows:

" 'The legislature shall not vacate nor alter any road laid out by commissioners of highways, or any street, alley or public ground in any city or village or in any recorded town plat.' *Constitution of* 1908, art. 8, § 27.

"That portion of Grand River avenue which the highway commissioner is attempting to widen within the corporate limits of the city of Detroit is not a street in the sense used in the Constitution. It is a State trunkline road, lawfully established as such. * * * This expenditure by the State is on the theory that a State trunkline road running through a city is not a matter of purely local concern, but is for the benefit of the people of the entire State. Grand

River avenue is not a city street in the constitutional sense, and, therefore, its improvement by the State, which requires the taking of private property for that purpose, is not forbidden by Constitution of 1908, art. 8, § 27.

"But it is further urged that the Constitution gives to cities exclusive control of their streets and that fact prevents the State from assuming any control over them. The Constitution does not so read:

" 'The right of all cities, villages and townships to the reasonable control of their streets, alleys and public places is hereby reserved to such cities, villages and townships.' Constitution of 1908, art. 8, § 28.

"This section of the Constitution was construed by the court in *People* v. *McGraw*, 184 Mich. 233. After quoting from the proceedings and debates of the constitutional convention, it was said:

" 'From this, and also from reading the debates with reference to the insertion of the word "reasonable," it is clear that it was not the intention of the framers of the Constitution to deprive absolutely the State itself of control over its highways and bridges in the cities, villages, and townships. * * * In other words, the municipality retains reasonable control of its highways, which is such control as cannot be said to be unreasonable and inconsistent with regulations which have been established, or may be established, by the State itself with reference thereto.'

"The State is committed to a comprehensive system of highway development which requires that it should extend its trunkline roads through cities. The legislature has undertaken to bring this about by providing for cooperation between the cities and the highway department. Cooperation by the cities is not compulsory, but the proposition is made so attractive that, for financial reasons and for the general public good, cities are willing to cooperate. This they may do without relinquishing their constitutional right to a reasonable control of their streets."

The fact that we have already determined herein that Court street is a part of a State trunkline highway obviously diminishes the force of plaintiffs' argument with regard to the above-mentioned constitutional provisions.

It is further asserted that inasmuch as the proposed structure is a combination bridge over the river and grade separation over an intersecting railroad, the action of the city in authorizing such structure and entering into the contract for building it is invalid because it proceeded by resolution rather than by ordinance.

We have already mentioned the fact that the statute provides that the city may declare the necessity for a grade separation by resolution. Is it necessary then to proceed by ordinance, rather than by resolution, to determine necessity and to enter into the contract in question because of the fact that the structure is, in part, a bridge? The contention of appellants is based upon the theory that proceedings for the erection of a bridge are legislative in character, and that, because the charter of the city requires all legislation to be by ordinance, the procedure by resolution is invalid. There is no charter requirement that contracts entered into by the city be by ordinance, nor is there any statute requiring such procedure.

In 3 McQuillin on Municipal Corporations (2d Ed.), p. 842, § 1281, it is said:

"In some municipalities the charter or an applicable statute requires that all contracts shall be by ordinance. But where the State legislature has authorized a municipality to make a contract and does not require it to be done by ordinance, the legislative body of the municipality may contract by vote upon motion, or by the passage of a resolution. Thus a charter provision that all 'legislative power of the city' must be exercised by ordinance does not require authority to enter into a contract to be conferred by ordinance, since the letting of contracts is not a legislative function."

In *Detroit* v. *Railway*, 215 Mich. 401, this court said:

"An ordinance has been defined to be a permanent, continuing regulation, while the resolution is an act of a temporary character not prescribing a permanent rule of government."

If no statute prescribes a method of action and no charter provision requires it, when the action is merely declaratory of the will of the corporation in a given matter, and is in the nature of a ministerial act, it is proper to act by resolution. *Weilage* v. *City of Crete*, 110 Neb. 544 (194 N. W. 437).

The city was not prohibited from entering into such a contract by statute. Nothing in its charter prescribed that it act by ordinance rather than by resolution in such matters. There is no question here regarding the manner of making appropriations for the structure as, under the charter, appropriations are made by resolution. The action of the city in proceeding by resolution was valid.

We have examined other contentions in the briefs and find them unimportant to our determination.

Claimed error in statements made by the trial court in its opinion granting the motion to dismiss, not essential to the determination thereof, could be treated as surplusage in any event, the trial court having properly decided the determining questions. Plaintiffs' bill was dismissed as insufficient in substance. See *Rathbun* v. *State*, 284 Mich. 521.

The order of dismissal of bill of complaint is affirmed, no costs being allowed as a public question is involved.

BUTZEL, C. J., and WIEST, BUSHNELL, SHARPE, POTTER, CHANDLER, and NORTH, JJ., concurred with McALLISTER, J.

POTTER, J. (*concurring*). Plaintiffs, if injured by the construction of the bridge and grade separation, are not without remedy. It needs no citation of authorities in support of the proposition:

"That the grant of powers and privileges (by the legislature) to do certain things does not carry with it any immunity for private injuries which may result directly from the exercise of those powers and privileges." *Baltimore & Potomac R. Co.* v. *Fifth Baptist Church,* 108 U. S. 317 (2 Sup. Ct. 719).

"The test is, would the injury, if caused by a private person without authority of statute, give the plaintiff a cause of action against such person? If so, then he is entitled to compensation notwithstanding the statute which legalizes the damaging work." *Peel* v. *City of Atlanta,* 85 Ga. 138 (11 S. E. 582, 8 L. R. A. 787).

I concur with Mr. Justice McALLISTER.

BUTZEL, C. J., and WIEST, BUSHNELL, SHARPE, CHANDLER, and NORTH, JJ., concurred with POTTER, J.