KLEE *v.* LIGHT.

1. Specific Performance—Property Owned by Husband and Wife —Lease Signed by Wife.

Specific performance of provisions of a lease may not be granted to owners who are husband and wife, where only the wife signed the lease.

---

References for Points in Headnotes

[1] 49 Am Jur, Specific Performance § 34.
Mutuality of remedy as essential to granting of specific performance. 22 ALR2d 508.
[2] 37 Am Jur, Motions, Rules, and Orders § 16.
[3] 12 Am Jur, Continuances § 26.

2. MOTIONS—HEARING—EVIDENCE.

    Testimony may be taken at the hearing of a motion when a question of fact is presented, and it is especially desirable to do so, where the determination of a particular fact would allow the granting of a motion to dismiss and finally dispose of litigation (CL 1948, § 618.8; Court Rules Nos 18, 32 [1945]).

3. SAME — HEARING — CONTINUANCE — EVIDENCE — DISCRETION OF COURT.

    The denial of a continuance of a hearing on a motion to dismiss bill for specific performance of a lease was not an abuse of discretion, where dismissal had been sought on ground that lease of property owned by husband and wife was signed by wife only, and proofs and defendant's depositions supported determination that plaintiff husband had not signed the lease (CL 1948, § 618.8; Court Rules Nos 18, 32 [1945]).

Appeal from Wayne; Andrews (Mark S.), J., presiding. Submitted April 14, 1960. (Docket No. 60, Calendar No. 48,236.) Decided June 6, 1960.

Bill by Henry Klee and Rose Klee against Albert Light and Viola Light for specific performance of agreement to transfer liquor license and to enjoin removal thereof from rented premises. Bill dismissed on motion. Plaintiffs appeal. Affirmed.

*William J. McBrearty* and *Ira W. Jayne,* for plaintiffs.

*Axford, Cashen, Hally & Baird,* for defendants.

KAVANAGH, J. Plaintiffs filed a bill of complaint on August 1, 1958, asking for specific performance of an agreement regarding the sale of a bar, its fixtures, and the bar license. The bill of complaint alleged that plaintiffs owned a building on Gratiot avenue in the city of Detroit; that in 1932 [1933?] they secured a class C liquor license; that in 1946 this license was transferred to Roland Klee and to Rose Klee, wife of Henry Klee; that thereafter the li-

cense, bar, and fixtures were sold and transferred to Albert Light and a partner, Norman E. Schram; that the partnership of Light and Schram was dissolved in March, 1953, and thereafter disputes arose between the Klees and the Lights with respect to various upkeep charges, including water bills and a refrigerating device alleged by the plaintiffs to have been installed by them at a cost of between $1,500 and $2,000. Plaintiffs claimed that Schram's interest in the class C license was transferred to Viola Light and claimed that Albert Light agreed in a lease entered into on August 25, 1953, in consideration of the Klees paying increased water bills and installing the refrigerating unit, that the defendants Light would allow the class C license to remain in the premises, but if the Lights desired to move and thereby terminate the landlord-tenant relationship, the Lights would transfer the class C license back to plaintiffs, who thereupon would become bound to buy another class C license for the Lights and pay for the transfer of that license to the new location. Plaintiffs claimed they operated a bowling alley in their building and that irreparable damage would be done if the liquor license was transferred away from their building.

Defendants filed an answer denying all of these claims, except they admitted that Viola Light had been added as a party on the license and that a landlord-tenant relationship did exist between plaintiffs and defendants from August, 1948, to the date of the filing of the lawsuit in 1958. The original bill of complaint did not state whether the August, 1953, agreement was oral or written.

After the case was praeciped ready for trial, depositions under discovery rules were taken of litigants Albert Light, Viola Light, Henry Klee, and others.

Following a pretrial hearing on November 6, 1958, defendants filed a motion to dismiss the bill of complaint. This motion alleged that Henry Klee, one of the plaintiffs, had testified in a deposition that the specific performance sought by the bill of complaint was based on a written contract signed by Albert Light, and, since the bill of complaint did not mention the written contract, the bill should be dismissed. An order requiring plaintiffs to amend their bill of complaint was thereafter entered. The plaintiffs filed an amended bill of complaint on January 23, 1959. This bill repeated the original charges but specifically charged, in paragraph 2 of the amended bill of complaint, that:

"On August 25, 1953, a written lease was entered into between plaintiffs and the defendant Albert Light, the original of which lease was given to Albert Light, read by him and signed by him on August 25, 1953."

Plaintiffs' amended bill alleged that the original of this lease was given to Albert Light. The bill also alleged that a copy, partially damaged by fire, was found in the garage of plaintiffs, photostatted and attached to the amended bill. The copy of the original lease was not witnessed, was not signed by Henry Klee, and was not notarized. However, the amended bill claimed the original lease was signed by the Klees and by Albert Light. The amended bill of complaint was never answered.

A motion to dismiss was filed by defendants on March 17, 1959. This motion alleged that the property involved in the lawsuit was owned by Henry Klee and Rose Klee, but that "exhibit A", the lease agreement, bore the signature of one plaintiff only, Rose Klee, and that, therefore, said lease agreement is void and not enforceable under the laws of the State of Michigan, and that the court could

not grant the plaintiffs any relief upon such an instrument. Defendants prayed that the plaintiffs' amended bill of complaint be dismissed.

The motion to dismiss was heard by Judge Mark S. Andrews on March 23, 1959. Some testimony was taken and arguments made on that day. The court at the conclusion of the day stated:

"All right. Let the record show, however, that this matter is set down for trial on Wednesday, the 25th, at 2 o'clock, on the issue of whether or not the plaintiff, Henry Klee, signed the lease that's in dispute."

On March 25, 1959, Judge Andrews, after argument by counsel and after testimony, granted the motion to dismiss. The court held that Henry Klee had not signed the lease in dispute. The court considered the depositions, the sworn bills of complaint, and the testimony of witnesses taken, and arrived at the conclusion that Henry Klee had not signed the lease in dispute, and dismissed the bills of complaint. The court took the testimony relying on CL 1948, § 618.8 (Stat Ann § 27.988), and Michigan Court Rules Nos 18 and 32 (1945).

Plaintiffs appeal, raising the question of whether the trial court, in a case not at issue, may disregard well-pleaded allegations in a bill of complaint and grant a motion to dismiss after having taken into consideration the pleadings, depositions on file, and testimony taken under Michigan Court Rule No 18 and under the provisions of CL 1948, § 618.8 (Stat Ann § 27.988).

It was admitted in the lower court by all parties that if plaintiff Henry Klee had not signed the original lease, plaintiffs' action must fail. Plaintiffs do not question this rule of law on appeal. The language of the statute and of Michigan Court Rules Nos 18 and 32 (1945) is clear and unequivocal, and

the right to take such testimony has been consistently upheld by this Court. *Case* v. *City of Saginaw,* 291 Mich 130. See, also, *Schempf* v. *New Era Life Association,* 253 Mich 152; *Cohen* v. *Detroit Joint Board Amalgamated Clothing Workers of America,* 327 Mich 606; *Midwest Properties Co.* v. *Journeymen Barbers Union,* 330 Mich 478; *Mathews* v. *United Association,* 351 Mich 293. See comments in Honigman's Michigan Court Rules Annotated (1959 pocket part) under Court Rule No 18, § 3. This Court not only recognizes the right of the lower court, under the circumstances that existed in this case, to take testimony, but urges trial judges to do so where determination of a particular fact would allow the granting of a motion to dismiss and finally dispose of litigation. The statute and rules were designed to assist busy trial courts in this regard. Full opportunity to protect the rights of the parties can be given under such a procedure.

The only question is whether or not, having decided to take testimony, a prejudicial error was committed by refusing the attorney for the plaintiffs additional time to subpoena defendant Albert Light. In this connection this Court feels that when testimony is taken every opportunity should be given the parties to produce all the facts in exactly the same manner as they would be able to do at a trial on the merits. As was said by Mr. Justice Smith in *Bonner* v. *Ames,* 356 Mich 537, 541:

"We recognize, of course, and have often held, that a motion to reopen proofs is a matter within the discretion of the court. But the discretion must be a sound judicial discretion."

In the instant case adequate opportunity was provided plaintiffs to present all their witnesses. At the time the matter was set down for trial the fol-

lowing colloquy took place between the court and counsel:

"*The Court:* How many witnesses will there be? Do you propose to call the parties who were there at this alleged signing?

"*Mr. Cashen:* I only talked to Mr. Klee. He told me he didn't sign it.

"*The Court:* Two persons, I would think.

"*Mr. McBrearty:* I would use 3, your Honor, I guarantee that now. The fourth I would produce, except the one's up in the northern part of the State, up near Alpena. I'll produce the Klees.

"*Mr. Cashen:* What do you mean by the 3 Klees?

"*Mr. McBrearty:* Well, I'm about to tell you. Henry, Kenneth, and Rose Klee.

"*Mr. Cashen:* The only reason I asked of Rose Klee, they asked me not to bring her down, she was not well. She was very sick.

"*Mr. McBrearty:* I don't know. She doesn't look sickly to me.

"*The Court:* What I am getting at is I hope to conclude a matter that has been pending or been in for several days, sometime tomorrow morning, and if you wanted to do it tomorrow morning, it could be arranged.

"*Mr. Cashen:* He's got the zoning commission. Wednesday morning at 9 o'clock or 10?

"*The Court:* I think we better have it at 2, with the regular motions.

"*Mr. McBrearty:* In the afternoon?

"*The Court:* Yes, 2 o'clock Wednesday.

"I call your attention, I looked the statute up while I was out * * * [CL 1948, § 618.8 (Stat Ann § 27.988)], under which the court may set these contested matters for hearing on motion.

"*Mr. Cashen:* Oh, I'll concede that, your Honor.

"*The Court:* All right. Let the record show, however, that this matter is set down for trial on Wednesday, the 25th, at 2 o'clock, on the issue of whether

or not the plaintiff, Henry Klee, signed the lease that's in dispute."

It is to be noted that plaintiffs' counsel at this time stated he only intended to call the 3 Klees. No statement was made at that time that Albert Light and Viola Light would be needed by the plaintiffs. At the hearing on March 25, 1959, the record discloses that an affidavit was filed by Henry Klee and Rose Klee, reciting that on August 25, 1953, they each signed a written lease with Albert Light for the rental of the Gratiot avenue property and that Albert Light also signed said lease in the presence of Kenneth Klee and Roland Klee. Before the testimony was taken, counsel for the plaintiffs, Mr. McBrearty, and defendants' counsel, Mr. Cashen, made the following statements:

"*Mr. McBrearty:* This is most confusing to me. We're here today in response to almost the demand of Mr. Cashen that he be permitted to cross-examine the plaintiff in this case, Henry Klee. Your Honor very sagely pointed out to us that under the statute, he even gave us the citation of the statute the other day [CL 1948, § 618.8 (Stat Ann § 27.988)], that the court is empowered and permitted to require the production of any and all witnesses when motions are before the court, where disputed facts are involved. Well, this, I thought, was that situation.

"I thought that disputed facts were involved. I thought all along, and I will to the end of this case, that it is claimed by the plaintiff that there was original instrument given to one of the plaintiffs which he either now has or has destroyed, and that all the parties signed, and I thought that we were here today to have the testimony so the court could determine what was credible and what was incredible here, so far as that instrument is concerned.

"I had hoped, and I was going to ask the court that when we finished cross-examining Mr. Klee on the subject, that I would ask Mr. Light to take

the stand and try to deny his signature on a copy, the important part of which had been burned by fire, but, for some reason or other, Mr. Light is not here for cross-examination.

"*Mr. Cashen:* Just a minute. I think that's kind of an unfair remark, your Honor please. Mr. Light is not here for cross-examination. Let's settle it; Mr. McBrearty didn't even ask me for him. I think that's a little unfair.

"*Mr. McBrearty:* I don't quite follow you, Mr. Cashen. I don't think that I am required, in a motion of this kind, to request anybody to come here. I always thought that a litigant would have sufficient interest in his case to be in court, and I assumed, wrongly, of course, but I assumed that your client would be here in court today. I see that my assumption was incorrect, so we will go on.

"Now, it appears, your Honor, that after your Honor has set aside this time to take testimony, now it appears that Mr. Cashen has changed his mind. He doesn't want testimony to determine this disputed question. I thought that possibly we could save time in determining these things, because, after all, the counsel says the burden is upon the plaintiff in this case. The burden isn't upon me to prove his motion to dismiss. He's here on a motion to dismiss, and I filed an affidavit, which I think, right or wrong, is in the nature of an answer to his claim that only one party signed a vital instrument.

"I produce an affidavit; could have done it also in our answer, in our sworn answer, your Honor, but did it again just so there wouldn't be any question about it.

"In the sworn answer I said it, rather, they said it, this is a chancery case. The parties said it under oath, that there was a written lease, the original of which was given to Albert Light, read by him, and signed by him on August 25th, and I said the written lease was entered into between plaintiffs, again, your Honor, as I said Monday, that's plural; that means Rose Klee and Henry Klee.

"Now, it is our claim, right or wrong, that Albert Light was given the original of that lease. We have 2 people here in the room; one man has come a long ways from the upper part of this State, the son of Mr. Klee, to take a chance on the laws involving perjury, your Honor, to testify, under oath, that his client did sign this lease, and we're here to meet an issue, not raised by ourselves but raised by the defendants' attorney, who now says, 'Don't decide this on evidence, your Honor. Decide it on, on this motion I make.'

"Well, I don't see how, I really don't. I don't see how the court can decide this matter, disputed question of fact, in any but 1 of 2 ways:

"A. Either hear the persons who are acquainted with the facts and decide who is telling the truth or who isn't, or

"B. Deny the motion; refer this matter on to the trial court to let him, in the course of events, decide that issue.

"Because one day, your Honor, whether they avoid meeting it today or not, one day that issue has to be tried. Who is telling the truth here? *We are perfectly prepared,* and at some inconvenience and expense to a party, to a witness who's not a party to this action, except by relationship to his father, we're here in response to counsel's demand, *and we're ready to go ahead.* (Emphasis added.)

"So, otherwise, I would respectfully suggest to the court that if counsel isn't ready to proceed with his motion, that the court would then decide the motion on what is before the court."

It is to be noted that plaintiffs' attorney indicated he was well prepared to proceed and was asking the court to proceed to take testimony, even over the objections of defendants' counsel.

The court then proceeded to hear the witnesses, and at the conclusion of the taking of testimony the court engaged in the following colloquy with counsel:

*"Mr. McBrearty:* That's all, your Honor, that we have to offer in the way of proof.

*"Mr. Cashen:* Do you want any argument, your Honor?

*"The Court:* I don't wish to curtail the presentation of this matter. If you gentlemen wish to argue and want to stay, I'm prepared to listen.

*"Mr. McBrearty:* Well, I have to—I have no desire to argue, your Honor. I don't think argument would throw any additional light on this subject.

*"Mr. Cashen:* I think that I'll waive. The only thing I wanted to point out, your Honor, that there is no question about there being 2 originals, as Mr. Klee testified, that he instructed Mr. Sabbe, the attorney, to prepare the 2 instruments, and that they were each to retain one."

The court then rendered his opinion indicating he did not believe the witnesses that were produced and that Henry Klee had not signed the lease and, therefore, the motion to dismiss was granted. When the court in his oral opinion indicated his position in this regard, plaintiffs' counsel sought the opportunity to subpoena defendant Albert Light as a witness as one who had knowledge of the facts involved, eventually asking for a continuance of the matter so as to subpoena Mr. Light. This the court denied. This Court would look with some disfavor upon the denial of this motion if it was not for the fact that the deposition of Albert Light had been taken and was on file in the case, and Edward Dobreff (indicated in the bill of complaint as the attorney for plaintiffs and listed in the deposition hearings as attorney for plaintiffs) cross-examined defendant Albert Light with reference to the proposed lease.

An examination of the depositions of Albert Light and Viola Light, which were considered by Judge Andrews, discloses that Mr. Dobreff questioned them

at length with respect to the proposed leases. Both testified they had not signed a new lease. Both testified that the plaintiffs agreed to have a new lease drafted and that they were subsequently to meet and discuss the signing of it. Both testified, on cross-examination, that so far as they knew nothing was done toward preparing the new lease. Therefore, Mr. McBrearty's request to continue the matter to give him an opportunity to cross-examine Mr. Light relative to the lease, likely would have availed him nothing. We must assume that Judge Andrews took this into consideration in denying the motion to continue.

In view of all the above facts, we do not believe the trial court abused his discretion in denying the motion for continuance.

The order of the trial court dismissing the bill of complaint is affirmed, with costs in favor of the appellee.

DETHMERS, C. J., and CARR, KELLY, SMITH, BLACK, EDWARDS, and SOURIS, JJ., concurred.