# JANUARY TERM 1880.*

HIRAM ALLEN v. JOHN S. DUFFIE, LEVI MORRILL ET AL.,
TRUSTEES, ETC.

*Works of necessity and charity—Subscriptions taken in church on Sunday to pay church expenses.*

The choice of trustees to hold property, at a meeting of the members of a religious society, is not enough to effect a statutory incorporation in Michigan.

An objection cannot be raised in the Supreme Court if it was not brought to the notice of the trial judge.

Where suit is brought in the name of certain persons as trustees of a certain religious society, and there is no averment or recital of incorporation, it must be assumed that none exists or is relied on.

The trustees of any unincorporated society organized for a lawful purpose, may receive gifts and promises on its behalf; and a mutual subscription for its benefit may be supported even though no payee is named, if the object is made definite and certain. The mutual promise of the subscribers is a sufficient consideration.

A declaration upon a promise to pay presently is consistent with the defendant's having been at liberty to take a year's time or more on giving his note, if he did not do so.

Whether work done on Sunday is within the exception to the Sunday law as a work of necessity or charity is purely a question of law and statutory construction, and depends in all cases upon the intent of the statute.

Where a rule of law is in accord with the finding of a jury the verdict may be allowed to stand even though the question was improperly left to them.

Mere convenience of time and opportunity cannot be the test as to whether work done on Sunday is work of necessity.

All the necessary and usual work connected with religious worship

* Continued from Vol. 42.

is work of charity. Religious societies are formed to do good to mankind, and charity is active goodness.

Raising subscriptions from a congregation on Sunday to pay off a church debt, or purchase a house of worship is a work of charity within the exception to Comp. L. § 1984, which prohibits Sunday business.

The support of public worship is a work of charity that may properly be done on Sunday, and subscriptions taken for that purpose from a congregation assembled for religious exercises on the Sabbath may be sustained.

A point that is not contested and is assumed without consideration in deciding a case, is not itself decided.

Error to St. Clair. Submitted Jan. 21. Decided Feb. 11.

Assumpsit. Defendant brings error.

*O'Brien J. Atkinson* and *Elliott G. Stevenson* for plaintiff in error. The statute prohibiting business on Sunday applies to anything that can be done on week-days, *State v. Conger* 14 Ind. 396; *Adams v. Himmel* 2 Doug. (Mich.) 76; a Sunday contract cannot be ratified, *Tucker v. Mowrey* 12 Mich. 378.

*Wm. T. Mitchell* and *Wm. Potter* for defendant in error.

Cooley, J. This is an action brought upon a subscription made for the purchase of a house of worship for a religious society. From the evidence it appears that Levi Morrill, who was one of the trustees of the society, had constructed the building on his own land and at his own expense, expecting, but having no assurance, that the society would take it off his hands and reimburse the cost. At one of the regular services of the society, held on a Sunday in August, 1876, the officiating clergyman stated the facts to the congregation, and a proposition was made that the amount needed to purchase the building from Mr. Morrill be then raised by subscription. Many persons then offered sums which they specified. There was a subscription paper with a heading, whereby the several persons promised to pay the sums set opposite their names respectively. This paper was lost or destroyed, and was not produced on the

trial, and none of the witnesses could say with confidence that it named any payee or any object, but the people well understood the object, and that the purchase was to be for the society then assembled. The several donors did not subscribe their own names, but a Mr. Mills subscribed for them as they announced their proposed gifts. By the terms of the subscriptions as given by the witnesses they would be payable presently, but it seems to have been understood that the subscribers were to have a year to pay in, or longer if they desired, on giving their notes. Among the persons promising to give was the plaintiff in error, who agreed to pay twenty-five dollars. The subscription paper was afterwards turned over to Mr. Morrill, and he deeded the church property to the society. When plaintiff in error was afterwards called upon for his note, he refused to give it, saying his word was as good as his note, and intimating that as the promise was made on Sunday, he could not be compelled to pay unless he chose to do so. Not having made payment or given his note previous to August, 1878, this suit was then instituted.

The suit was brought in the name of John S. Duffie, Levi Morrill and Peleg Soules, trustees of the Methodist Protestant church of Brockway circuit. The declaration does not allege that they sue as a corporation, nor was there in the case any sufficient evidence that the society was ever incorporated. The record of the society was given in evidence, from which it appeared that at a meeting held in December, 1868, three persons, of whom Levi Morrill was one, were chosen trustees of the church; "the said trustees to hold the property of the Methodist church, Brockway Center, Michigan district, in trust for said church." Whether this was intended as an act of incorporation we do not know: it was in itself ambiguous, and it was also incomplete to effect a statutory incorporation. *Trustees etc. v. Clark* 41 Mich. 730. There was no evidence of corporate action afterwards, previous to the subscription on which the suit was brought.

I. It was assumed on the part of the defense that the suit purported to be brought by a corporation, and that it must fail because the fact of corporate existence was not made out. But as has already been said, the suit does not purport to be brought by a corporation, and the declaration does not allege that a corporation exists. The suit is brought by certain persons describing themselves as trustees for a certain religious society. Now, if the society is actually incorporated, the name they sue by may possibly be the corporate name; but in the absence of any averment or recital of incorporation, we must assume that none exists or is relied upon. The attention of the circuit judge does not seem to have been called to the want of proof to show that the plaintiffs were trustees in fact, and therefore the defect, if it was one, is not available in this court. There is no doubt that the trustees of any unincorporated society which is organized for a lawful purpose may receive gifts or promises on its behalf, and a mutual subscription may be supported even though no payee be named, provided the object is made definite and certain, as it unquestionably was in this case. *Comstock v. Howd* 15 Mich. 237. The mutual promises of the subscribers are all the consideration the case requires. *Underwood v. Waldron* 12 Mich. 73.

II. It is further objected that there was no evidence tending to support the contract declared upon; that the promise actually proved was not to be performed within a year, and consequently was void under the statute of frauds because not in writing and subscribed by the party himself.

The only special count in the declaration was a count upon a promise to pay twenty-five dollars presently; but we think the evidence tended to support this. The parties were at liberty to take one year's time or more on giving notes, but the defendant did not avail himself of this privilege. It is true that the evidence on

this point was fairly open to another construction, but it is not pretended that the court erred in any ruling respecting it, provided there was any evidence of a promise to pay presently which could properly have been left to the jury. But if the witnesses who undertook to give the terms of the subscription paper remembered them correctly, the promise was set out in the special count of the declaration according to its legal effect.

III. The principal question in the case is whether the contract was void because made on Sunday. The plaintiff in error contends that the business of raising subscriptions on Sunday to pay off a church debt or to purchase a house of worship is within the prohibition of the statute, and that any contract made in the course of it is therefore void. The defendants in error dispute this, and insist that the case is one within the exceptions of the statute. The statute is as follows: "No person shall keep open his shop, warehouse, or workhouse, or shall do any manner of labor, business, or work, except only works of necessity and charity, or be present at any dancing, or at any public diversion, show, or entertainment, or take part in any sport, game, or play, on the first day of the week; and every person so offending shall be punished by a fine not exceeding ten dollars for each offense." Comp. L., § 1984. Whatever labor, business or work is prohibited by this statute is confessedly illegal, and promises made in the course of it can support no action. So much is conceded.

Is the raising of money for the purchase of a house of worship a work of necessity or charity? That is the question made; or perhaps it is a little narrower than this, namely: Is the solicitation of contributions from a congregation assembled on Sunday for religious worship, in order to pay for a house of worship which has been erected for their occupation for religious purposes, a work of necessity or charity? The circuit judge was of opinion that the question involved an element of fact as well as of law, and he submitted it to the jury in that view. "If the agreement or contract," he instructed

them, "was made on Sunday, it is void unless it is a work of necessity or charity for which it was made. Our statute prohibits the performance of business or labor on Sunday except as to work of necessity or charity, and the Supreme Court has decided that all contracts made on that day are void except for a work of necessity or charity. As to whether this subscription comes within this exception I shall leave it for you to determine. There may be honest differences of opinion on this subject, and therefore I leave it to you as a question of fact. And you are not to be controlled in considering this by the practice of churches. It is not what churches have done in this respect, but what they ought to have done in view of the statute. This law may be intended to prevent this business in churches. The raising of money to build churches may have been one of the objects contemplated by the statute. If you find that this subscription was not for a work of necessity or charity, it is void and cannot be ratified. If you find it to be a work of necessity or charity, it need not be ratified."

The judge was in error in supposing that the question was either wholly or partially a question of fact. It is a question of law purely, and cannot be left to depend upon the opinions of jurors as to what is a work of charity or necessity and what is not. If it could, there would be and could be no settled rule whatever, for jurors will never agree upon it. The question is purely one of statutory construction, and when we find what the statute intends, that intent must be the law for all cases. Nevertheless if the rule of law is found to be in accord with the finding of the jury, namely, that the promise in question is within the exception of the statute, the instruction will thus appear to have been harmless, and the verdict may be allowed to stand.

We shall waste no time upon the question whether the business done in taking the subscriptions was a work of necessity. No doubt the time chosen was the most convenient time for taking up subscriptions, because the persons concerned would be likely to be generally present, but it might for the same reason have been the most convenient time for doing other business, such as the trading of horses, the hiring of laborers, and the

general settlement of accounts, had the persons present
been disposed to engage in such transactions.    If mere
convenience is to be the test of necessity, any work on
Sunday may be shown to be necessary under some cir-
cumstances.   *Jones v. Andover* 10 Allen 18; *Sparhawk v.
Union Passenger Railway Co.* 54 Penn. St. 401; *Johnston
v. Commonwealth* 22 Penn. St. 102.    The defendants in
error do not pretend to sustain such a doctrine, but rely
upon the exception in favor of works of charity.

What then are works of charity?  What works are
exempted from the prohibition of the statute as fit and
proper to be done upon a day which is generally observed
as a day of rest and of worship?   This is the inquiry to
which our attention is limited.

Charity is active goodness.   It is doing good to our
fellow men.    It is fostering those institutions that are
established to relieve pain, to prevent suffering, and to do
good to mankind in general or to any class or portion
of mankind.    As the term "charity" is made use of in
our law, it no doubt takes on shades of meaning from
the Christian religion, which has largely affected the great
body of our laws, and to which we must trace the laws
which punish what the Christian regards as the dese-
cration of the first day of the week.   It was never
doubted, so far as we know, that all the necessary or
usual work connected with religious worship was work
of charity.   If it were not so, the minister who preaches,
the organist and precentor who furnish the music, and
the sexton who cares for the building on Sunday, would
be violating the law every day they performed service
for their religious society, and not only would be pre-
cluded from recovering compensation, but might be pun-
ished for services which are proper in themselves, and
for which the day is specially set apart.   But their work
is not illegal, because it is in a true sense, and indeed
in the very highest sense, charitable.   Religious societies
are formed to do good to mankind.

The Statute of Charitable Uses, 43 Eliz., c. 4, enu-

merates the repair of churches among the charitable objects which it specifies. It would be unsafe to take that statute as the test of what might be done on Sunday, for it enumerates many objects which are only charitable in the sense that private provision for them tends to relieve the general public of a burden. A schoolhouse or a town hall may be the subject of a charitable use, under the statute of Elizabeth, because when provided for by a private donor, the community which must otherwise have borne the burden is relieved and benefited. But as the public is not taxed for the support of churches and other religious societies, a private donation in their aid is not charity in the same sense in which a donation which relieves a public burden is a charity. The charity in such case consists in giving aid to an institution whose purpose is to do good in other ways than by making pecuniary burdens lighter, and this, as is said above, is charity in a higher sense than is the mere relief from a pecuniary burden.

It has been said that "to save life, or prevent or relieve suffering, and this in the case of animals as well as men; to prepare needful food for man and beast; to save property, as in the case of fire, flood, or tempest, or other unusual peril, would unquestionably be acts which fall within the exception" of the statute. *Commonwealth v. Sampson* 97 Mass. 407 409. By another authority it is asserted of the Sabbath as its observance is protected in Pennsylvania, "that rest, and the public worship of Almighty God, were the primary objects of the institution, both as a divine and civil appointment; and it seems to me to follow, as a necessary consequence, that no means reasonably necessary to these ends can be regarded as prohibited." *Johnston v. Commonwealth* 22 Penn. St. 102 111. In a series of decisions in Massachusetts the exception of the statute is held to cover everything which is morally fit and proper to be done upon Sunday, under the particular circumstances of the case. *Commonwealth v. Knox* 6 Mass. 76; *Flagg v. Millbury* 4 Cush. 243;

*Bennett v. Brooks* 9 Allen 118; *Doyle v. Lynn etc. R. R. Co.* 118 Mass. 195. In other States a similar doctrine is held, and its origin is traced to the very Founder of the Christian religion. Where Sunday travel is prohibited, it is nevertheless lawful to go reasonable distances to visit near relatives (*McClary v. Lowell* 44 Vt. 116; *Pearce v. Atwood* 13 Mass. 324; *Gorman v. Lowell* 117 Mass. 65) or even intimate friends. *Commonwealth v. Sampson* 97 Mass., 407. On the general subject the following cases throw more or less light, and are all in the same direction: *Logan v. Mathews* 6 Penn. St. 417; *Johnston v. People* 31 Ill. 469; *Stanton v. Metropolitan Railroad Co.* 14 Allen, 485; *Feital v. Middlesex Railroad Co.* 109 Mass. 398.

The support of religious societies being in itself a charity, the general custom of such societies as to the methods by which the means of support may be collected may throw much light on the question what is admissible? The general sense of a Christian people has demanded and secured the law, and their method of observing the day must be some evidence of the sense in which the law is enacted. Now it is matter of common observation that religious societies solicit moneys for their needs and take subscriptions at their regular meetings on the first day of the week. The custom is from time immemorial. The regular Sabbath offerings, as they are called, are limited sometimes to gifts for the poor, or for sacramental purposes, or missions, but quite as often they embrace gifts for the general needs of the society, including the repairs of the church, the lighting and heating, the payment of the taxes, and the numerous other needs which do not differ at all from the needs of ordinary business associations. Nobody has ever asserted, so far as we are aware, that the taking up of these Sabbath offerings was illegal and punishable under the statute. On the contrary the custom is considered fitting and proper to the occasion, and the congregation gives

no doubt with a devotional spirit that is fully in harmony with the purpose for which they are assembled.

And if small sums may be gathered on Sunday for the support of public worship and for providing buildings for the purpose, and keeping them in repair, why not large sums? Does the amount of the several gifts make any difference when the general object is the same? Is it legal for deacons, vestrymen or other officers to pass a box for the reception of contributions in small change, and illegal for the officiating minister, as he stands in his pulpit, to solicit contributions in dollars?

In whatever consideration we give to this subject we are to keep in mind that the promise, if void at all, is void because the transaction in the course of which it is made is prohibited and made punishable by statute. If it is, then all business similar in its nature connected with church work and pertaining to what may be called the secular side of religious organizations, must be illegal and punishable also. The clerk of the society could not make his annual report on Sunday; the treasurer could not report the accounts between the society and its several members; the clergyman might be fined for appealing to his parishioners to be more liberal in their donations, and a warden or moderator might be fined for taking on Sunday a vote of the congregation that the salary of the officiating clergyman should be increased. None of these acts pertain to the religious worship, but they are nevertheless means by which religious worship is supported. And the taking up of subscriptions is only one method by which the cost of sustaining churches is apportioned among those who feel disposed to aid in so doing.

There may be and no doubt are differences of opinion as to whether it is wise or even decorous to pursue in aid of church building the course that was taken in this case. With those differences we have nothing to do. The questions which arise upon them are addressed to

the congregations themselves, and must be settled by them. We have no doubt whatever that the support of public worship is a work of charity within the meaning of the statute, and that promises like the one now in question may be sustained on that ground.

We have not overlooked the fact that in *Catlett v. The Trustees etc.* .62 Ind. 365 it was assumed by the Supreme Court of Indiana that such a promise was illegal. The report of the case does not show that the illegality was contested, and the case seems to have turned on a question of ratification. A point thus assumed without consideration is of course not decided.

We are of opinion that the judgment should be affirmed with costs.

.        The other Justices concurred.