SCHRIER v. CITY OF KALAMAZOO.

DISSENTING OPINION.

BRENNAN, J.

1. MUNICIPAL CORPORATIONS—STATUTES—CHARTER LIMITATIONS.
   General statute granting powers to cities supersedes charter limitations.

2. SAME—STATUTES—ORDINANCES—URBAN RENEWAL PLAN.
   Provision, in statute authorizing cities to adopt plans for rehabilitation of blighted areas, that all action by local legislative bodies shall be by ordinance or resolution, is not a statement of optional means, but rather is an enumeration of appropriate means to effectuate a development plan and does not delegate power to cities to legislate by resolution (CL 1948, § 125.82).

3. SAME—URBAN RENEWAL PLAN.
   An urban renewal plan adopted under provision of statute for rehabilitation of blighted areas is not self-effectuating; the wording in the statute "and made effective by the local legislative body" indicates the legislative intent that the effectuation of a plan is left to subsequent action by the city (CL 1948, § 125.80).

4. SAME—URBAN RENEWAL—ADOPTION OF PLAN BY RESOLUTION.
   Language in resolution of city commission adopting an urban renewal plan to the effect that certain land uses for the project area "will require" zoning changes and vacation of streets, that "certain official action must be taken by this body" with reference to zoning changes, vacation, and removal of streets and establishment of new street patterns, and that "this body stands ready" to "take appropriate action upon proposals and measures to effectuate" the plan, is indicative that the plan is

REFERENCES FOR POINTS IN HEADNOTES
[1] 37 Am Jur, Municipal Corporations §§ 95, 165.
[2] 37 Am Jur, Municipal Corporations §§ 76, 80, 95, 102, 105.
[3] 37 Am Jur, Municipal Corporations §§ 76, 77, 80, 81, 95, 102, 105, 107, 141, 144.
[4] 37 Am Jur, Municipal Corporations §§ 141–143, 204.
[5] 37 Am Jur, Municipal Corporations §§ 149, 187, 194, 195.
[6–8] 37 Am Jur, Municipal Corporations §§ 141–143, 194, 195, 204.
[9] 5 Am Jur 2d, Appeal and Error § 1009.
[10] 37 Am Jur, Municipal Corporations §§ 141, 155.

simply a plan and nothing more, and that its effectuation *is* left to subsequent action; hence, the plan was properly adopted by resolution and is not subject to referendum.

5. SAME—URBAN RENEWAL PLAN.
   Provisions in urban renewal plan, adopted by resolution of the city commission, relative to land use and land-use objectives, are construed, in the absence of an ordinance, to apply to land acquired by the city through negotiation or condemnation, and to mean that the city will bring about a change in land use only through acquisition and resales.

6. SAME—URBAN RENEWAL.
   An urban renewal plan can be adopted by resolution of the city commission, not subject to referendum, where the resolution indicates that other public action such as change in zoning and vacation of streets will be required to effectuate the plan and that a series of actions will be required to bring the plan to fruition.

7. SAME—URBAN RENEWAL—RESOLUTIONS—REFERENDUM.
   An urban renewal plan, adopted by resolution of a city commission, which indicates that other public action is necessary to carry out the plan, is not self-effectuating; hence, the resolution of adoption is not subject to referendum.

8. SAME—URBAN RENEWAL—ORDINANCES—REFERENDUM.
   Ordinances necessary to carry out the provisions of an urban renewal plan are subject to the same provisions regarding referendum as any other city ordinance under the city's charter (*Kalamazoo Charter, § 63*).

9. COSTS—PUBLIC QUESTION—MUNICIPAL CORPORATIONS—URBAN RENEWAL PLAN.
   No costs are allowed on determination of validity of adoption by resolution of city commission of urban renewal plan, a public question being involved.

### OPINION OF THE COURT.

10. MUNICIPAL CORPORATIONS—URBAN RENEWAL—ADOPTION OF PLAN.
    Action by city commission in adoption of a municipal development and urban renewal plan which alters substantially the city's zoning ordinances, restricts issuance of building permits for construction not in accordance with land uses prescribed by the plan, and imposes construction requirements not contained in city's building code, is legislative in its essentials; hence, adoption of the plan is a nullity where the city commis-

sion failed to comply with the city's charter requirements for adoption of ordinances (CL 1948, § 125.71 *et seq.*, as amended).

#### On APPLICATION FOR REHEARING.

11. MUNICIPAL CORPORATIONS—URBAN RENEWAL PLAN—RETROACTIVE VALIDATION BY STATUTE.

    Judgment holding invalid action of city commission, in adoption of a municipal development and urban renewal plan by resolution, for failure to comply with city's charter requirements for adoption of ordinances is ordered vacated after effective date of amendatory statute validating retroactively action taken by the city commission (PA 1945, No 344, as amended by PA 1968, No 189).

Appeal from Kalamazoo, VanValkenburg (Wade), J., and from Court of Appeals prior to decision (No. 3,798). Submitted January 12, 1968. (Calendar No. 16, Docket No. 51,794.) Decided May 6, 1968. Rehearing granted June 25, 1968, see page 636.

Complaint by Paul J. Schrier, a city commissioner, and 12 other taxpayers and electors of the city of Kalamazoo, against Arlene R. Vander Roest, city clerk, William H. Bayliss and 5 other city commissioners, and against the City of Kalamazoo, a municipal corporation, for mandamus to compel holding of election on initiatory petition, to declare void adoption of urban renewal plan, and to compel referendum vote thereon.

Judgment for defendants on motions for summary and accelerated judgments, ordering vote on initiatory petition, determining adoption of urban renewal plan void, and denying referendum vote thereon as moot. Defendants appeal. Plaintiffs cross-appeal. On joint application of parties cause appealed to Supreme Court prior to decision in Court of Appeals. Attorney General intervenes as appellant on behalf of the people of the State of Michigan. Affirmed. Order vacated on application for rehearing.

*Bauckham & Reed,* for plaintiffs.

*David Morris,* City Attorney, and *Morris, Culver & Corsiglia,* for defendants.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Maxine Boord Virtue* and *Milton I. Firestone,* Assistant Attorneys General, for intervening appellant. *Amici Curiae* on application for rehearing:

City of Detroit, by *Robert Reese,* Corporation Counsel, and *Robert D. McClear* and *William J. Coughlin,* Assistants Corporation Counsel.

City of Grand Rapids, by *Steven L. Dykema,* City Attorney, and *Wendell A. Miles* and *Dale W. Rhoades,* Special Assistant City Attorneys.

Brennan, J. (*dissenting*). After several years of study and planning, the city commission of the city of Kalamazoo, pursuant to PA 1945, No 344, as amended (CL 1948, § 125.71 *et seq.,* as amended [Stat Ann 1958 Rev and Stat Ann 1968 Cum Supp § 5.3501 *et seq.*]), and the United States housing act of 1949, as amended, 42 USCA § 1450 *et seq.,* adopted a resolution on December 19, 1966, calling for a public hearing on the question of adopting a development plan and undertaking an urban renewal project known as "Central Parkway South Urban Renewal Area Project No. Mich R–101."

This public hearing was scheduled at the Kalamazoo city hall at 7:30 p. m., February 1, 1967. Publication and mailing of notices as provided by law were directed. On January 20, 1967, 12 days before the public hearing, plaintiffs filed with the defendant city clerk an initiatory petition seeking a vote of the city electors on the proposed urban renewal plan.

On February 1, 1967, the hearing was conducted, and on February 6, 1967, the city commission, by

a vote of 6 to 1, approved a resolution adopting the development plan. On February 10, 1967, the plaintiffs here filed a petition to initiate a charter amendment relating to urban renewal. On February 24, 1967, plaintiffs filed a third petition seeking a vote of the city electors on the plan as approved by the city commission.

The defendants, as city officials, refused to approve or take affirmative action pursuant to any of the petitions filed by plaintiffs, and this action was commenced on February 28, 1967, requesting mandamus to require the holding of the requested elections and seeking injunctive relief to restrain implementation of the urban renewal program as adopted. Defendants filed a motion for accelerated or summary judgment, and plaintiffs also sought summary judgment.

The trial court held that the January 20th initiatory petition was premature and initiated nothing. The trial court also held that the February 10th charter amendment petition was proper, and ordered the charter amendment put to the city electorate. It was defeated in November 1967. The trial court further held that the action of the city commission on February 6, 1967, was a nullity and of no force or effect. Accordingly, the trial court held that as to the February 24th petition the matter therein sought to be presented to the voters was moot. We granted leave to take a bypass appeal before decision by the Court of Appeals.

The issue is stated as follows:

*Whether an urban redevelopment plan under PA 1945, No 344, is subject to referendum.*

Plaintiffs argue that the urban renewal plan adopted by the Kalamazoo city commission on February 6, 1967, is subject to referendum under the charter of the city of Kalamazoo.[1] Defendants counter that the plan is not subject to referendum because

referendum applies only to ordinances, and the action taken by the commission on February 6, 1967, was not an ordinance but rather was the adoption of a resolution. Plaintiffs concede that a resolution is not subject to referendum, but plaintiffs contend that the action of the commission in adopting the plan constituted legislative action and was therefore an attempt to pass an ordinance under the guise of a resolution. Defendants counter by saying that PA 1945, No 344, permits the adoption of a development plan by resolution, citing section 12 of the act.[2] Defendants argue that since the statute permits adoption of the plan by resolution the statute thereby supersedes the charter of the city of Kalamazoo and enlarges powers therein granted to the city commission. Defendants cite section 13 of the act in support of their position.[3]

It is true that, where the legislature by general law grants power to cities, that power supersedes

---

[1] "Sec. 63. If within 20 days from time of the enactment of any ordinance other than emergency measures by the city commission, or if at any time before the same shall have been published or posted and due notice of enactment given as provided in section 14 of this charter, a petition shall be filed with the city clerk protesting against such ordinance taking effect and signed by registered voters of the city in number of not less than 15% of the number of total valid ballots cast for commissioners at the last preceding regular election and verified as required in section 33 of this charter and certified by the clerk as required in this charter, the same shall thereupon be suspended from taking effect; and the city commission shall at its next regular session reconsider such ordinance and act thereon; and if the same be not entirely repealed the city commission shall submit such ordinance by the method hereinbefore provided for referendum of ordinances initiated by petition, to the vote of the qualified electors of the city, either at the next regular municipal election or at a special election which may be called for that purpose at the discretion of the city commission and such ordinance shall not take effect unless a majority of the qualified electors voting thereon at such election shall vote in favor thereof."

[2] "Sec. 12. All actions of local legislative bodies under the provisions of this act shall be by ordinance or resolution and such ordinance or resolution shall be subject to the same provisions regarding procedure and executive veto as are applicable to other ordinances or resolutions of the legislative body." CL 1948, § 125.82 (Stat Ann 1958 Rev § 5.3512).

[3] "Sec. 13. The powers granted in this act shall be in addition to

charter limitations. We do not, however, read Act
No 344 to be a general delegation of power to cities
to legislate by resolution. Section 7b of the act,
being CLS 1961, § 125.77b (Stat Ann 1968 Cum Supp
§ 5.3507[2]), provides for borrowing money and says
that it can be done by resolution. On the other hand,
section 10, CL 1948, § 125.80 (Stat Ann Rev 1958
§ 5.3510), in talking about deviations from the plan
as adopted, provides that the city shall vest jurisdic-
tion in the zoning board of appeals by means of an
ordinance directed to that purpose. Therefore, we
read section 12 of the act to be an enumeration of
appropriate means to effectuate a development plan
rather than a statement of optional means.

The real difficulty in this lawsuit stems from the
fact that section 10 of the act is ambiguous. Both
parties here, as well as the circuit judge, have read
section 10 to mean that an urban renewal plan is
self-effectuating. We do not think this is the proper
interpretation of the statute. The pertinent por-
tion of section 10 reads as follows:

"On and after the date when a plan has been approved for the
rehabilitation of an area by the local legislative body, no permit
shall be issued for work or work done in the area which is not in
accordance with the plan officially adopted and *made effective by
the local legislative body.*" (Emphasis supplied.)

The key words in this quoted paragraph are "and
made effective by the local legislative body." Un-
less these words are to be ignored, then it must be
the legislative intent that the effectuation of a plan
is left to subsequent action by the city. This scheme
is borne out by the language of the resolution adopt-
ing the plan. That resolution envisions further ac-
tion by the city. It says, in part:

powers granted to municipalities, the local legislative bodies thereof
and other officials and bodies thereof under the statutes and local
charters. Nothing herein contained shall be construed to amend or
repeal any of the provisions of Act No. 18 of the Public Acts of
1933 as amended." CL 1948, § 125.83 (Stat Ann 1958 Rev § 5.3513).

"Whereas the urban renewal plan for the project area prescribes certain land uses for the project area and *will require,* among other things, changes in zoning, the vacating and removal of streets, alleys, and other public ways, the establishment of new street patterns, and the location and relocation of sewer and water mains and other public facilities, and *other public action.*"

The resolution further provides:

"That, in order to implement and facilitate the effectuation of the urban renewal plan hereby approved, it is found and determined that *certain official action must be taken by this body* with reference, among other things, to changes in zoning, the vacating and removal of streets, alleys, and other public ways, the establishment of new street patterns, the location and relocation of sewers and water mains and other public facilities, and other public action, and, accordingly, this body hereby (a) pledges its cooperation in helping to carry out the urban renewal plan; (b) requests the various officials, departments, boards, and agencies, of the locality having administrative responsibilities in the premises likewise to cooperate to such end and to exercise their respective functions and powers in a manner consistent with the urban renewal plan; and (c) *stands ready to consider and take appropriate action upon proposals and measures designed to effectuate the urban renewal plan.*"

The plan itself refers to "proposed" land uses and thereafter details the land uses which are proposed. It is true that the plan contains in C,2,c the following language:

"c. *Initiation and duration of land-use provision and requirements.*
"The above stated land-use objectives, provisions, and requirements shall be in full force and effect for a period of 25 years from the date of original city commission approval of the urban renewal plan and shall automatically extend for five-year periods thereafter, unless changed by the city commission."

We do not understand this provision, however, absent an ordinance to that effect, to apply to any other than property to be acquired by the city through negotiation or condemnation. The charter, section 138, provides that the city may condemn by resolution.[4]

In further support of the proposition that the language of paragraph C,2,c of the plan applies only

_____

[4] "Section 138.   The city commission shall by resolution provide for acquiring by condemnation or otherwise such property and rights as may be required for any public use or purpose within the scope of its powers in the manner prescribed by the statutes of the State of Michigan." (As amended November 6, 1956). Charter of the City of Kalamazoo, § 138.

to city acquisitions, the very next paragraph, C,2,d, provides:

"d. *Applicability of land-use objectives, provisions, and requirements to real property not to be acquired.*

"Every effort will be made by the city of Kalamazoo to apply the above land-use objectives, provisions, and requirements to real property not to be acquired. As a minimum, these objectives, provisions, and requirements shall be applicable to property in the clearance area which is not to be acquired when the owner thereof acquires project land."

Thus, it is the scheme that the city will bring about a change in land use only through acquisition and resales. If the new land use, as provided in the plan, is already permissible under existing zoning ordinances, the zoning ordinances will not have to be changed. If the new land use is not permissible under existing zoning law, then either the city will have to change the zoning law or the purchaser will have to obtain permission for a variance from the zoning board of appeals.

The plan also seems to embody a scheme of changing land use by threat of acquisition. Thus, paragraphs D,1,b, and D,1,c, provide as follows:

"b. *Conditions under which property not designated for acquisition may be acquired.*

"Property not designated for acquisition may be acquired (by negotiation) by the city of Kalamazoo if such property is not made to conform to the urban renewal plan, and local codes and ordinances.

"c. *Conditions under which property identified to be acquired may be exempted from acquisition.*

"Property presently designated for acquisition in the urban renewal plan and not necessary to accomplish plan objectives may be exempted from acquisition by the city of Kalamazoo if the owner or owners enter into suitable agreement with the city demonstrating conclusively that the proposed redevelopment, or rehabilitation of such property conforms in all respects with the design objectives, land-use provisions, and building requirements of this urban renewal plan."

In summary then, the urban renewal plan is simply a plan and nothing more. Like all other city plans it will require a series of actions in order to be brought into fruition. Some of the required actions will have to be accomplished by ordinance and will be subject to referendum. Some of the objects of the plan can be accomplished by resolution and

these will not be subject to referendum. In this respect, the urban renewal plan does not differ from any other plan.[5]

We conclude, therefore, that the plan itself was lawfully adopted by resolution of the city commission on February 6, 1967, and that referendum does not lie to defeat the adoption of the plan. We also conclude that the plan is not self-effectuating, and that ordinances necessary to carry out the plan are subject to the same provisions regarding referendum as are applicable to any other ordinances of the city.

The judgment of the circuit court of Kalamazoo county should be reversed and the cause remanded for entry of an order in accordance with this opinion. No costs, this being a public question.

SOURIS, J. I cannot agree that Kalamazoo's adoption of a municipal development and urban renewal plan pursuant to State and Federal laws* is just an administrative or ministerial procedure appropriate to city commission action by resolution.

Such action, in my opinion, must be accomplished by ordinance procedures, for it is legislative in its essential features. It purports to alter substantially the city's zoning ordinance, to restrict issuance of building permits for construction not in accordance with land uses prescribed by the plan, to impose construction requirements not contained in the city's building ordinance and in several other respects to accomplish objectives normally requiring action by ordinance.

---

[5] "Section 57. The city commission may appoint a city plan board, and provide for the making of a comprehensive plan for the city. For such purposes it may appropriate the necessary funds and provide all needed rules, regulations and ordinances for carrying the same into effect." Charter of the City of Kalamazoo, § 57.

* CL 1948, § 125.71 et seq., as amended (Stat Ann 1958 Rev and Stat Ann 1968 Cum Supp § 5.3501 et seq.) and 42 USCA 1450 et seq.

Because the city commission failed to comply with the city charter's requirements for adoption of ordinances, I hold, as did the circuit judge, the Honorable Wade VanValkenburg, that the action taken by the commission was a nullity. For this reason I would affirm.

DETHMERS, C. J., and KELLY, BLACK, T. M. KAVANAGH, O'HARA, and ADAMS, JJ., concurred with SOURIS, J,

## ON APPLICATION FOR REHEARING.

PER CURIAM. For the purposes declared below the application for rehearing is granted.

By the Court's decision of May 6, 1968, it was determined that the reviewed municipal action of Kalamazoo, having been taken under PA 1945, No 344 by resolution rather than ordinance, was null for reasons set forth in the opinion of Justice SOURIS. Since that decision was entered, however, the legislature has amended section 12 of said Act No 344, by immediately effective PA 1968, No 189,* to include the following new language:

"Any provision in this or any other act or in the charter of any municipality to the contrary notwithstanding, any action of local legislative bodies relating to the approval or modification of a development plan heretofore taken under the provisions of this act by resolution and all actions subsequent thereto dependent on such earlier actions are validated. Any development plan heretofore approved by resolution may thereafter be modified by resolution.";

thus validating retroactively that which, prior to the effective date of said Act 189, was invalid.

In view of the quoted amendatory language our judgment of May 6 is ordered vacated. The record will be remanded to circuit for entry of a new judgment upholding the aforesaid municipal action.

BRENNAN, J., dissenting.

* Said Act No 189 became effective June 22, 1968.