RENSHAW v. COLDWATER HOUSING COMMISSION.

1. Municipal Corporations—Public Welfare—Housing.

Cities, incorporated villages, and townships are empowered by statute to purchase, acquire, construct, maintain, operate, improve, extend, or repair housing facilities and eliminate housing conditions which are detrimental to the public peace, health, safety, morals, or welfare and to create by ordinance a commission with powers to accomplish these purposes (CLS 1961, §§ 125.652, 125.653).

2. Same—Housing Commission—Public Welfare.

A housing commission created by ordinance pursuant to the housing and slum clearance act has the power to determine in what areas of the city or village it is necessary to provide proper sanitary housing facilities for families of low income and for the elimination of housing conditions which are detrimental to the public peace, health, safety, morals, or welfare (CL 1948, § 125.657).

3. Same—Housing—Slum Clearance Act—Legislative Intent—Zoning.

The intent of the legislature in enacting the housing and slum clearance act is apparent in its use of language in defining

REFERENCES FOR POINTS IN HEADNOTES
[1] 40 Am Jur 2d, Housing Laws and Urban Development §§ 2, 9, 10, 15.
[2] 40 Am Jur 2d, Housing Laws and Urban Development §§ 10, 18–21.
[3, 4] 40 Am Jur 2d, Housing Laws and Urban Development §§ 2, 3.
[5] 40 Am Jur 2d, Housing Law and Urban Development §§ 14, 26.
[6] 5 Am Jur 2d, Appeal and Error § 1009.

purposes of the act, which plainly rides over the force of local zoning ordinances (CLS 1961, §§ 125.652, 125.653; CL 1948 §§ 125.657, 125.689).

4. SAME—HOUSING—SLUM CLEARANCE—STATUTE—CONSTRUCTION.
   The housing and slum clearance act directs the courts to apply the act as full authority for the purposes provided by its terms, any provisions of the laws of the State or of any charter to the contrary notwithstanding (CL 1948, § 125.689).

5. SAME—HOUSING—SLUM CLEARANCE—LOCAL ZONING.
   Local zoning ordinances are subordinate to the directives of the housing and slum clearance act; thus, plaintiffs could not enjoin the construction of a federally financed housing project on grounds that the project failed to comply with local zoning ordinances (CLS 1961, §§ 125.652, 125.653; CL 1948, §§ 125.657, 125.689).

6. COSTS—PUBLIC QUESTION—HOUSING—SLUM CLEARANCE.
   No costs are awarded on appeal from circuit court denial of injunction against construction by local housing commission of federally financed housing project, a public question being involved.

Appeal by leave granted prior to decision by Court of Appeals from Branch, Andrews (Mark S.), J. Submitted December 3, 1968. (Calendar No. 18, Docket No. 51,975.) Decided March 3, 1969.

Complaint by Oscar Renshaw and Mary Renshaw against the Coldwater Housing Commission, a Michigan municipal corporation, and William Grimes, Building Commissioner of the City of Coldwater, to enjoin construction of a building by defendant Housing Commission and to compel defendant Building Commissioner to revoke the building permit for the project. Summary judgment for defendants. Plaintiffs appeal by leave granted prior to decision by the Court of Appeals. Affirmed.

*Daniel Hodgman,* for plaintiffs.

*Richard F. Biringer* and *Clay T. Brockman,* for defendants.

Per Curiam. Two ordinances of the city of Coldwater, conflicting as the parties agree, frame the issue decided below and brought here on appeal. The first, enacted in 1961 on authority of PA 1921, No 207, CL 1948, § 125.581 *et seq.* (Stat Ann 1958 Rev and Stat Ann 1968 Cum Supp § 5.2931 *et seq.*), zoned the area adjacent to and including plaintiffs' residence so as to exclude construction and occupancy as in the second ordinance provided. The second ordinance was enacted in 1965 on authority of PA 1933 (Ex Sess), No 18, as amended, CL 1948, § 125.651 *et seq.* (Stat Ann 1958 Rev and Stat Ann 1968 Cum Supp § 5.3011 *et seq.*). This last cited statute is known generally as the housing and slum clearance of 1933.

Both the title and certain sections of the act of 1933 (Ex Sess) have been amended from time to time. We are concerned presently and particularly with sections 2, 3, 7, and 39 thereof. The pertinent portions of those sections are arrayed below.

"Sec. 2. Any city, incorporated village or township of the state of Michigan may purchase, acquire, construct, maintain, operate, improve, extend or repair housing facilities and eliminate housing conditions which are detrimental to the public peace, health, safety, morals or welfare." CLS 1961, § 125.652.

"Sec. 3. Any city, incorporated village or township may create by ordinance, a commission with power to accomplish the purposes set forth in section 2 of this act." CLS 1961, § 125.653.

"Sec. 7. Such commission shall have the following enumerated powers and duties:
(a) To determine in what areas of the city or village it is necessary to provide proper sanitary housing facilities for families of low income and for

the elimination of housing conditions which are detrimental to the public peace, health, safety, morals, and/or welfare." CL 1948, § 125.657.

"Sec. 39. This act shall, without reference to any other statute or to any charter, be deemed full authority for the purposes herein provided for and for the issuance and sale of the bonds by this act authorized, and shall be construed as an additional and alternative method therefor and for the financing thereof, any provisions of the general laws of the state or of any charter to the contrary notwithstanding." CL 1948, § 125.689.

Coldwater proceeded under the 1965 ordinance to create such a municipal housing commission. The commission planned and commenced construction of a 4-story, 100-unit federally financed unit, designed to house nontransient persons aged 62 or over, in the aforesaid zoned area. The necessary building permit was issued, the construction contract was let, and construction commenced July 31, 1967.

August 2, 1967, plaintiffs filed complaint in the local circuit, alleging that the proposed unit if constructed would violate the zoning ordinance as that ordinance stood prior to enactment of certain enabling 1967 amendments thereof (which amendments we assume but do not decide were invalid). Injunctive relief was prayed for and denied. Summary judgment, that plaintiffs' complaint failed to state a claim upon which relief could be granted, was entered. Appeal having been taken to the Court of Appeals, this Court granted bypass under GCR 1963, 852.

On appeal plaintiffs rely upon *Taber* v. *City of Benton Harbor* (1937), 280 Mich 522. There it was held that Benton Harbor, planning at the time to construct a municipal water tower in an area zoned for residence purposes, was bound by the ordinance

and subject to injunctive relief as prayed. That decision is inapposite here, our view of the aforesaid statutory provisions considered.

Looking at quoted sections 2, 3, 7, and 39 in conjunction with each other, the legislative intent vis-a-vis other laws, whether enacted as statutes, charters, or ordinances framed under other statutes, is both conspicuous and repeatedly pronounced. A commission created by ordinance under section 3 is empowered unconditionally "to accomplish the purposes set forth in section 2 of this act." The purposes set forth in section 2 are qualified only by the wording of section 2 and that wording plainly rides over the force of local zoning which may be said as being in conflict therewith.

Turning to section 7 we find an unfettered grant of power, to such a commission, "To determine in what areas of the city" it is necessary to provide the legislatively defined housing facilities. Then section 39 adds a directive to the courts, bidding them to apply the act as "full" authority for the purposes provided by its terms, "any provisions of the general laws of the state or of any charter to the contrary notwithstanding."

We hold that Coldwater's zoning ordinance is pertinently subordinate to the powers of the Coldwater housing commission as those powers are defined and declared by the quoted statutory provisions.

Affirmed. No costs, below or here.

T. E. Brennan, C. J., and Dethmers, Kelly, Black, T. M. Kavanagh, and Adams, JJ., concurred.

T. G. Kavanagh, J., took no part in the decision of this case.