ROLLINGWOOD HOME OWNERS CORPORATION, INC.,
v. CITY OF FLINT

Opinion of the Court

1. Zoning—Housing—Municipal Corporations—Referendum.

The housing and slum clearance act allows a city to violate the provisions of its own zoning ordinance, but a city's zoning ordinance may not be superseded except by an ordinance which necessarily is subject to a referendum (MCLA § 125.651 *et seq.*).

2. Zoning — Public Housing — Municipal Corporations — Ministerial Function.

A large scale rezoning of property for the purpose of providing for public or quasi-public housing and involving the building of multi-million dollar housing complexes, largely with Federal grants, is not merely a ministerial function of government.

3. Municipal Corporations — Ordinance — Resolution — Public Housing — Referendum.

Resolution of the Flint City Commission approving a contract for construction of a public housing project which was let without aid of competitive bidding procedures at a total project cost of $3,556,812, and which will have a substantial impact and permanent influence upon the community, was in reality an ordinance which, pursuant to the city charter, is subject to referendum (Flint Charter §§ 158, 159).

Dissenting Opinion

Levin, P. J.

4. Municipal Corporations—Housing Commission—Zoning.

*The rule that powers of a municipal commission under the*

References for Points in Headnotes

[1–7] 40 Am Jur 2d, Housing Laws and Urban Redevelopment § 8.
58 Am Jur, Zoning § 120 *et seq.*
Applicability of zoning regulations to governmental projects or activities. 61 ALR2d 970.

*housing and slum clearance act may be exercised without regard to local zoning is plainly applicable irrespective of the size of the project and irrespective of the manner in which the development contract is entered into (MCLA § 125.651 et seq.).*

5. MUNICIPAL CORPORATIONS—HOUSING COMMISSION—STATUTES.

*The Flint Housing Commission is empowered to exercise its powers under the housing and slum clearance act without regard to general statutes or the provisions of its charter; thus, the commission enjoys sweeping power to provide low income housing and to eliminate detrimental housing conditions under comprehensive state enabling legislation which expressly supersedes the vagaries of other state statutes and local charter provisions (MCLA § 125.651 et seq.).*

6. MUNICIPAL CORPORATIONS—HOUSING COMMISSION—CONTRACTS— REFERENDUM.

*The legislature in requiring that all contracts entered into by a housing commission under the housing and slum clearance act be approved by the local governing body did not intend also to subject particular urban renewal projects to possible rejection at the polls (MCLA § 125.651 et seq.).*

7. MUNICIPAL CORPORATIONS—HOUSING COMMISSION—REFERENDUM.

*General referendary provisions of local charters are subordinate to the housing and slum clearance act and to the powers of a housing commission created under that act (MCLA § 125.651 et seq.).*

Appeal from Genesee, Anthony J. Mansour, J. Submitted Division 2 January 9, 1970, at Lansing. (Docket No. 6,383.) Decided August 10, 1970. Leave to appeal granted October 21, 1970. 384 Mich 769.

Complaint by Rollingwood Home Owners Corporation, Inc., and residents of the Rollingwood Village area against the City of Flint, the Flint Housing Commission, Cruse-Loren Corporation, and others for an injunction to prevent defendants from constructing a public housing project on property adjacent to Rollingwood Village. Summary judg-

ment for defendants. Plaintiffs appeal. Reversed and remanded.

*Lyndon J. Lattie,* for plaintiffs.

*Parker & Nelson,* for Cruse-Loren Corporation.

*Robert E. Weiss,* City Attorney, and *Herbert Hutchins,* Assistant City Attorney, for City of Flint and Flint Housing Commission.

Before: LEVIN, P. J., and HOLBROOK and BRONSON, JJ.

HOLBROOK, J. This case involves an action brought in the Genesee County Circuit Court by individual plaintiffs, residents of the Rollingwood Village area of the City of Flint, and a corporate plaintiff, an association of residents of the same area, to enjoin the defendants, City of Flint, a Michigan municipal corporation, the Flint Housing Commission, and Cruse-Loren Corporation, a Michigan corporation engaged in the business of real estate development, from constructing a public housing project on property adjacent to Rollingwood Village and zoned as an A–2 single-family medium density district.

The parties, pursuant to GCR 1963, 812.10, as amended 1965, submitted an agreed statement of facts which is restated in part as follows:

"On July 27, 1964, the City of Flint enacted ordinance No 1788, creating the Flint Housing Commission, pursuant to Act No 18, Public Acts of 1933, Extra Session, as amended, MCLA § 125.651 *et seq.*[1] Some time prior to May 9, 1968, defendant Cruse-

---

[1] Stat Ann 1969 Rev § 5.3011 *et seq.*—REPORTER.

Loren Corporation negotiated with defendant Flint Housing Commission and the Housing Assistance Administrator of the Department of Housing and Urban Development, both United States government agencies, for the construction of a project to be known as Branchwood East, labeled by the Housing Assistance Administrator and the Flint Housing Commission project Michigan 9–9. The project is for 183 single family dwellings on property in the City of Flint, presently unplatted, but adjacent to various platted parcels known as Rollingwood Village in which the individual plaintiffs reside. In addition to the 183 single family dwellings, a community building, so-called, will be constructed as part of the project.

"Prior to May 9, 1968, it became known that the Flint Housing Commission and Cruse-Loren Corporation would enter into a contract for the said project. On May 9, 1968, plaintiffs filed a complaint asking among other things a temporary restraining order and a preliminary injunction blocking the further actions of all defendants in regard to the project. On May 13, 1968, the court issued a temporary restraining order. On May 16, 1968, defendant Cruse-Loren Corporation filed its motion to dissolve the temporary restraining order and the hearing on the same was held on May 17, 1968.

"After hearing arguments of counsel on the 17th of May, 1968, the temporary restraining order was dissolved by order of the court. Arguments on plaintiffs' order to show cause why a temporary injunction should not issue were heard on May 21, 1968 and May 23, 1968, and on May 24, 1968, the court issued its opinion denying the injunctive relief requested by plaintiffs. An order denying injunctive relief was filed on May 27, 1968.

\*    \*    \*

"On July 8, 1968, the city commission of the City of Flint adopted a resolution approving the Flint Housing Commission contract with Cruse-Loren

Corporation.   Thereafter, the contract was sub-
mitted to the Housing Assistance Administrator for
his approval.   That approval has not yet been
granted.

"Within 30 days after the adoption of the resolu-
tion authorizing the contract, plaintiffs caused to be
filed with the clerk of the City of Flint referendum
petitions[2] seeking a referendum election on the reso-
lution approving the contract.   The city clerk has
refused to take any action certifying or otherwise
recognizing the validity of the petitions, acting on
advice of the city attorney to the effect that the
resolution is not subject to referendum.

                    *     *     *

"The contract in question is a so-called 'turnkey'
project, whereby the contract is negotiated directly
between the sponsor or developer, in this case,
Cruse-Loren Corporation and the Public Housing
Commission, subject to the approval of the Housing
Assistance Administrator.   *     *     *

"In summary, the four basic factual matters to
which the parties stipulate and which give rise to
the instant appeal are as follows:

"1. The Flint City Commission acted to approve
execution of the contract between Cruse-Loren Cor-
poration and the Flint Housing Commission by
adoption of a resolution rather than by passage of
an ordinance.

"2. The City of Flint, acting through its city
clerk refuses to certify the referendum petitions
circulated by plaintiffs and their associates and
delivered to the city clerk for certification, request-
ing a referendum vote on the resolution approving
execution of the contract.

                    *     *     *

"4. The project is a so-called 'turnkey' project as
defined in the 'Low-Rent Housing Manual' promul-

---

[2] Petitions with 5995 signatures were filed pursuant to PA 1933,
No 18 § 3, as amended (MCLA § 125.653; Stat Ann 1969 Rev
§ 5.3013), and §§ 158, 159 of the charter of the City of Flint.

gated by the Housing Assistance Administrator of the department of Housing and Urban Development of the United States Government. No competitive bidding procedures were used in the negotiation of this contract and the execution of this contract."

Plaintiffs appeal from the court's dismissal of their motion for summary judgment and from entry on September 30, 1968, of summary judgment of no cause of action for defendants, upon motion filed on August 19, 1968 pursuant to GCR 1963, 117, on all issues.

The issue to be determined is restated as follows:

*Was the defendant City of Flint required to approve by ordinance, rather than by resolution, a contract between defendant Flint Housing Commission and Cruse-Loren Corporation for construction of the public housing project in question, thereby rendering said approval subject to referendum?*

Plaintiffs contend that PA 1933, No 18, MCLA § 125.651 *et seq.* (Stat Ann 1969 Rev § 5.3011 *et seq.*), generally known as the housing and slum clearance act of 1933, requires that the authorization of a contract for the construction of public housing facilities must be accomplished by ordinance since a permanent influence will thereby be established on the community, with authorization having the effect of repealing or amending a prior ordinance. As authority for this position plaintiffs cite *Parr* v. *Lansing City Clerk* (1968), 9 Mich App 719. Also, see, *Ranjel* v. *City of Lansing* (1969), 417 F2d 321.

Defendants maintain that the housing and slum clearance act, *supra,* does not prevent authorization of a contract for construction of a public housing project by resolution. The purpose of the act is stated to be that of authorizing

"any city * * * to purchase, acquire, construct, maintain, operate, improve, extend and repair hous-

ing facilities; to eliminate housing conditions which are detrimental to the public peace, health, safety, morals or welfare; and for any such purposes to authorize any such city   *   *   *   to create by ordinance a commission with power to effectuate said purposes, and to prescribe the powers and duties of such commission and of such city."

In support of its position, defendants refer to §§ 2, 3, 7, 12 and 39 of the act which provide that a city may "purchase, acquire, construct, maintain, operate, improve, extend or repair housing facilities", MCLA § 125.652 (Stat Ann 1969 Rev § 5.3012); that it may create, by ordinance, a commission to accomplish the purposes of the act, MCLA § 125.653 (Stat Ann 1969 Rev § 5.3013); that such commission may determine in what area of the city proper sanitary housing facilities for low income families should be erected, and may contract for the design and construction of any housing project or projects, MCLA § 125.657 (Stat Ann 1969 Rev § 5.3017); that the commission shall have complete control of the housing project or projects including construction, maintenance and operation as if the commission represented private owners, MCLA § 125.662 (Stat Ann 1969 Rev § 5.3022); and that the act, by its terms, is to be deemed full authority for the purpose provided therein, "any provision of the general laws of the state or of any charter to the contrary notwithstanding", MCLA § 125.689 (Stat Ann 1969 Rev § 5.3049).

Defendants assert that the charter of the City of Flint does not expressly provide that contracts are to be approved by ordinance and cite *Renshaw* v. *Coldwater Housing Commission* (1969), 381 Mich 590. They argue that even if such provision were in the charter it would be inoperative. *Renshaw, supra,* held that a city's zoning ordinance is sub-

ordinate to the powers of its housing commission as those powers are defined and declared by the housing and slum clearance act and that, therefore, a housing commission is deemed to have "full" authority to carry into effect the purposes of the act notwithstanding that the action of such commission may violate the provisions of a city charter or ordinance or the general laws of the state. The Court, in *Renshaw*, did not, however, speak to the issue under consideration in the case at hand, *i.e.*, whether the city commission action (resolution versus ordinance) is subject to referendum.

The zoning ordinance of the City of Flint, No 2046, provides that the lot area of property, such as that involved in this case, zoned as an A–2 single-family medium density district, shall contain a minimum of 5,000 square feet per dwelling unit, a minimum front yard of 25 feet, a minimum side yard of 5 to 6 feet, and a minimum rear yard of 25 to 30 feet. The contract of sale executed between Cruse-Loren Corporation and the City of Flint Housing Commission and approved by the Flint City Commission provides that completed improvements "shall be in accordance with [a schedule set forth in] exhibit 'A'; in accordance with all state and local laws, codes, ordinances, and regulations applicable to the City of Flint, Michigan". A study of the proposed plat of the 183 lots encompassing the proposed Branchwood East housing project reveals that not all of the lots in question contain at least the minimum lot area specified in the ordinance and, in several instances, the proposed front and rear yard areas likewise do not meet the minimum requirements of the ordinance.

While the housing and slum clearance act, as interpreted in *Renshaw*, allows a city to violate the provisions of its own zoning ordinance, we rule that,

in a case such as the present, where the contract in
question was let to defendant construction corpora-
tion without the aid of competitive bidding proce-
dures at a total project cost of $3,556,812, and where
it is clear that the impact and permanent influence
of such action upon the community will be substan-
tial, the city's zoning ordinance may not be super-
seded except by an ordinance which necessarily is
subject to a referendum.

We are constrained to follow the decision of this
Court in *Parr* v. *Lansing City Clerk* (1968), 9 Mich
App 719. In that case Judge McGREGOR stated in
part as follows at pp 722, 723:

"Nomenclature in the legislative field is in some
ways analogous to naming a new-born child. In
both areas the given name is important, but not
determinative of much. A masculine name applied
to the 7th daughter in a family will not change that
lovely girl into the anticipated first son. Likewise,
the fact that the city council of Lansing chose to
label its action of May 8th a resolution is of little
moment, if in fact, it was improperly designated.

"The city attorney argues that only ordinances
are subject to referendums and for city action to be
an ordinance, it must be adopted in the manner pre-
scribed in section 6.3 of the Lansing city charter.
That section requires, among other things, that each
ordinance begin with the phrase, 'The city of
Lansing ordains * * * '. While this argument
has some appeal, the city council of Lansing is not
free to insulate its actions by mislabelling such
actions.

"As pointed out in 5 McQuillin, Municipal Corpo-
rations, § 15.02 at p 51, the difference between
municipal ordinances and resolutions is in what the
actions do, rather than in the manner in which they
are passed. Resolutions are for implementing min-
isterial functions of government for short-term
purposes. Ordinances are for establishing more

permanent influences on the community itself. *Kala-mazoo Municipal Utilities Association v. City of Kalamazoo* (1956), 345 Mich 318, 328. *By no stretch of logic can we find that a large-scale rezoning of property for the purpose of providing for public or quasi-public housing and involving the building of multimillion dollar housing complexes, largely with federal grants, is only a ministerial function of government.*

"Normally, when faced with the fact of a resolution passed by a city government in an area where an ordinance is required, this Court would respond by declaring the resolution void. 5 McQuillin, Municipal Corporations, § 16.10 at pp 173–177. In this case, however, we believe the better procedure is that followed by the trial court in allowing the resolution to stand as an ordinance, thus subject to the referendum procedures." (Emphasis supplied.)

Pursuant to *Parr, supra,* we determine the resolution of the Flint City Commission to be, in reality, an ordinance which, pursuant to §§ 158 and 159 of the city charter, is subject to referendum.

Reversed and remanded for further proceedings not inconsistent with this opinion. No costs, a public question being involved.

Bronson, J., concurred.

Levin, P. J. (*dissenting*). In *Renshaw*,[1] the Michigan Supreme Court ruled that a municipal housing commission established pursuant to the housing and slum clearance act of 1933[2] (the "act"), as was the defendant Flint Housing Commission, may exercise its powers and take necessary action to provide housing facilities for low income families and for

---

[1] *Renshaw v. Coldwater Housing Commission* (1969), 381 Mich 590.
[2] PA 1933 (Ex Sess) No 18, MCLA § 125.651, *et seq.* (Stat Ann 1969 Rev § 5.3011, *et seq.*).

the elimination of detrimental housing conditions without complying with local zoning ordinances.

The majority now say that, nevertheless, Flint's "zoning ordinance may not be superseded except by an ordinance which necessarily is subject to a referendum" because a contract between the housing commission and a particular developer, defendant Cruse-Loren Corporation, was entered into "without the aid of competitive procedures at a total project cost of $3,566,812 and   *   *   *   it is clear that the impact and permanent influence of such action upon the community will be substantial."

The asserted bases for distinguishing *Renshaw* are incongruous and unpersuasive.

It is expected that all urban renewal projects, small and large, will have impact and a permanent and substantial influence upon the community by alleviating the social conditions at which such projects are directed. It is not pertinent to the issue of whether local zoning requirements are preempted by the act that a particular contract between a particular developer and the housing commission was negotiated and was not preceded by competitive bidding.

*Renshaw's* rule that the powers of a municipal housing commission under the act may be exercised without regard to local zoning is plainly applicable irrespective of the size of the project, whether more or less than $3,556,812, and irrespective of the manner in which the development contract is entered into.

The issue presented in this case was not considered in *Parr* v. *Lansing City Clerk* (1968), 9 Mich App 719, relied on in the majority opinion. There the Lansing City Council adopted, by what it labeled a resolution, a reclassification or rezoning of a tract of land for development with public or quasi-public

housing.   We ruled that the council's action was subject to a referendum of the electorate even though it acted by resolution, not ordinance.[3]

It does not appear from the *Parr* opinion whether Lansing has a housing commission exercising powers under the act and, if so, whether the challenged reclassification or rezoning was in respect to a housing commission project; moreover, *Parr* was decided before the Supreme Court handed down its opinion in *Renshaw*.

In any event it was not contended in *Parr* that the construction of an urban renewal project pursuant to the act may not be subjected to a referendum[4] and, therefore, that issue was not there considered or decided.[5]   And that is the real issue in this case; not whether Flint's council could manifest its approval of the contract between the housing commission and Cruse-Loren by resolution or should have acted by ordinance.   Conceding, *arguendo,* that the contract could only be approved by an ordinance[6] and, therefore, the approving

---

[3] We declared (p 722, 723):

"Resolutions are for implementing ministerial functions of government for short-term purposes.  Ordinances are for establishing more permanent influences on the community itself.  (Citation omitted.)  By no stretch of logic can we find that a large-scale rezoning of property for the purpose of providing for public or quasi-public housing and involving the building of multimillion dollar housing complexes, largely with federal grants, is only a ministerial function of government."

*Cf. Schrier* v. *City of Kalamazoo* (1968), 380 Mich 626, 635, 636, and cases cited in footnote 6.

[4] Nor was it contended in *Parr* that a general referendary provision is inapplicable to a change in zoning because a referendum would be inconsistent with the procedures for effecting a change in zoning established in the city and village zoning enabling act (MCLA § 125.584, *et seq.* [Stat Ann 1969 Rev § 5.2934, *et seq.*])   See *Elliott* v. *City of Clawson* (1970), 21 Mich App 363.

[5] See *Allen* v. *Duffie* (1880), 43 Mich 1, 11, and authorities collected in *Chapman* v. *Buder* (1968), 14 Mich App 13, 20, fn 4.

[6] The Michigan case law appears to be to the contrary.  See *Case* v. *City of Saginaw* (1939), 291 Mich 130, 150, 151; *Kalamazoo Municipal Utilities Association* v. *City of Kalamazoo* (1956), 345

resolution functioned as an ordinance and should be deemed to be an ordinance,[7] the central question remains: Do the voters have a right to veto a particular urban renewal project?

In *Renshaw* the Court said that the legislative intent under the act (p 594) "vis-a-vis other laws, whether enacted as statutes, charters, or ordinances framed under other statutes, is both conspicuous and repeatedly pronounced"; and that § 39 of the act[8] (p 594) "adds a directive to the courts, bidding them to apply the act as 'full' authority for the purposes provided by its terms, 'any provisions of the general laws of the state or of any charter to the contrary notwithstanding' ".   The Flint housing commission is, thus, empowered to exercise its powers under the act without regard to general statutes or the provisions of its charter.   The commission, thus, enjoys sweeping power to provide low income housing and to eliminate detrimental housing conditions under comprehensive state enabling legislation which expressly supersedes the vagaries of other state statutes and local charter provisions.

While all contracts entered into by a housing commission under the act are required to be "approved by the governing body" of the municipality,[9] and, under the terms of Flint's charter, its city commission's action in approving the contract between

---

Mich 318, 333, 334, holding that a contract can be approved by resolution.

[7] But see *Schrier* v. *City of Kalamazoo, supra,* pp 635, 636.

[8] MCLA § 125.689 (Stat Ann 1969 Rev § 5.3049).

The following section of the act, § 40, MCLA § 125.690 (Stat Ann 1969 Rev § 5.3050), pursuing this theme, adds that the act "shall be liberally construed to effect the purposes thereof".

[9] "All deeds, contracts, leases or purchases entered into by the commission shall be in the name of the city or village and shall be approved by the governing body of said city or village.   Contracts for the purchase of necessary materials, leases with tenants and options need not be so approved."   MCLA § 125.661 (Stat Ann 1969 Rev § 5.3021).

Cruse-Loren and its housing commission might be subject to a referendum,[10] I am satisfied that in requiring the approval of the local governing body the legislature did not intend also to subject particular urban renewal projects to possible rejection at the polls.

The act provides that if a municipality creates a housing commission pursuant to its provisions, the creating ordinance is subject to a right of referendum on the part of the people.[11] This suggests that if the legislature intended to subject the operating decisions of the housing commission not only to the approval of the governing body of the municipality but also to voter disapproval, that this would have been explicitly provided for in the enabling act, as was the right of the people to reject the creating ordinance itself.

General referendary provisions in local charters are, in the language of the *Renshaw* Court (p 594), "subordinated" to the act and to the powers of housing commissions created under the act.

The plaintiffs-appellants have raised other issues but since this is a dissenting opinion and is not precedential there is no need to comment on them.

---

[10] But see footnote 6.

[11] MCLA § 125.653 (Stat Ann 1969 Rev § 5.3013).